## The John M. Chambers.[1]

### Belt and others v. Gumbel.[1]

**(Circuit Court, E. D. Louisiana. April, 1884.)**

**1. GENERAL AVERAGE.**
    A general average bond will not be invalidated when the evidence in the case does not show satisfactorily that there was either ignorance or error on the part of the signers; and when it shows that they have availed themselves of the bond to obtain their goods and their money from the insurance company, and shows no satisfactory reasons to the contrary, they cannot evade its obligations.

**2. COLLISION— EVIDENCE.**
    As between two witnesses to a collision, each on one of the colliding boats, one of whom was on the roof of his boat where he could have known what was going on, while the other was in the hold of one of the barges in tow of his boat, the court considers the testimony of the former as the most reliable; but, no other testimony being offered, the showing made by both is unsatisfactory, and leaves the court in ignorance as to the fault of the collision.

Admiralty Appeal.
*E. H. Farrar,* for libelants.
*M. M. Cohen,* for defendant.

PARDEE, J.   It seems that in November, 1882, the steam-boat John M. Chambers, coming out of the Attakapas, bound for New Orleans, with a cargo of produce for various consignees, collided with the tug Lowry and barges in the Mississippi river, about 100 miles from the city, whereby the Chambers was sunk; that thereafter her master and crew raised and partially repaired her, and saved her cargo, and in so doing incurred large expenses, which expenses were claimed as proper for general average.   The goods consigned to respondent were delivered on an average bond in the following terms, to-wit:

"Whereas, the steam-boat John M. Chambers, P. E. Burke, master, on a voyage from St. Martinsville, Bayou Teche, for New Orleans, met with an accident about 108 miles above this city, and sunk in about seven feet of wa-ter, on the twelfth day of November, 1882, and was compelled to employ as-

[1] Reported by Joseph P. Hornor, Esq , of the New Orleans bar.

sistance to save the boat and cargo; and the said boat, having been successfully raised and partially repaired, has completed her trip to New Orleans, whereby sundry expenses and charges have arisen, and various sacrifices have been made, which are the subject of general average, and should be borne by the property at risk as a common charge in contribution.

"Now, be it known, that we, the undersigned shippers, agents, consignees, or attorneys of certain consignees, owners, or insurers of the cargo of the said steam-boat John M. Chambers, in consideration of the premises, and in further consideration of the arrival and landing of our several parcels of merchandise, have agreed, and do hereby severally promise and agree, each for himself, and not one for another, that we will forthwith furnish to the adjuster all necessary *data* in connection with our respective interests; and, in the event of our failure to do so, he is hereby authorized and empowered to estimate the contributing value of our goods, and our claims for loss and damage, at our risk and cost; and that we will pay to the owners of the said steam-boat, or their authorized agents, whatsoever sums may be found due from us, respectively, for our respective proportions of such expenses, charges, and sacrifices as have accrued in consequence of the disaster aforesaid, such payment to be made whenever and so soon as the average shall have been adjusted according to law, and the usages of this port, by Edward Ivy, average adjuster; and when his adjustment shall have been approved by the 'average committee' of the New Orleans board of underwriters, it shall be deemed *prima facie* correct, and be binding on us.

"*Dated at New Orleans on the twentieth day of November*, 1882."

As provided in said bond, the adjustment was made by Ivy, adjuster, and the contribution of respondent was ascertained to be $495.60. When the adjustment was presented for approval to the average committee of the board of underwriters of the city of New Orleans, said committee rejected and disapproved the same, because it was not a case of inevitable collision, and that the party in fault must pay all the damages. Thereupon the parties entered into the following agreement:

"Whereas, certain parties, to-wit, A. J. Forstall, Gidiere, Day & Co., Ben Gerson & Son, S. Gumbel, L. Lacasagne, E. Malle & Co., Rykoski & Manade, Schwartz & Feitel, G. W. Sentell & Co., and Tertron & Pugh, did, on November 20, 1882, sign an average bond to the owners of the John M. Chambers;

"And whereas, the average under said bond has been adjusted by Edward Ivy, Esq., the person therein named;

"And whereas, the signers of said bond do not contest, so far as form is concerned, and assuming a foundation to exist to base the adjustment on, the correctness of said adjustment, or the amount found against each of them, but contend that the collision by which the accident mentioned in said bond happened was the result of the fault and negligence of the officers of said steamer Chambers, and that they are not liable for any sum whatsoever on said adjustment and on said bond;

"And whereas ten suits against each of said signers would be productive of much costs;

"It is hereby agreed between E. H. Farrar, attorney of said owners, and M. M. Cohen and H. N. Ogden, attorneys of said signers, that one suit shall be brought against S. Gumbel, one of said signers, in the district court of the United States for the Eastern district of Louisiana, on said bond, for the amount found due by them on said adjustment, to-wit, $495.60, and that the final result of said suit thereon, or on appeal, as the losing party shall elect,

shall be decisive of the rights of said owners as against all the other signers of said average bond.

"It is expressly understood that this agreement is made for the sole purpose of saving a multiplicity of suits, and of limiting the suit to be brought to the only questions at issue between the parties, *i. e.*, the issue of fault *vel non* on the part of the owners of said steamer John M. Chambers; and as to the said issue, neither party to this agreement is to be understood as making any admissions, or waiving any rights, or impairing any privileges of defense, at this time or otherwise; defendants contending that this is not a case of general average, and plaintiffs reserving specially the right to object to the raising of any such issue, or any issue of fault *vel non*, at this time and in this suit, and defendants insisting that they have a right to raise such issue, or any issue of fault *vel non*, at this time and in this suit.

[Signed]      "E. H. FARRAR, Atty. owners Jno. M. Chambers.
         "M. M. COHEN,
         "H. N. OGDEN,
            "Of Counsel for Defts.

"*New Orleans, May* 3, 1883."

The respondent admits the regularity and correctness of the adjustment, but alleges that he signed the bond in error and ignorance of the facts and circumstances of the case; that the adjustment was not approved by the average committee of the board of underwriters; that the collision by which the expenses set forth in the adjustment were incurred was occasioned by the fault, mismanagement, and carelessness of the employes of libelants; and that the case was not one in which he was liable for general average.

The evidence in the case does not show satisfactorily that there was either ignorance or error sufficient to invalidate the average bond. The whole evidence on the subject is embodied in the following question.to and answer of the party who signed it:

"*Question.* If the Chambers was in fault, and then you were advised by a lawyer that you would not be liable to contribute, because of the fault of the collision, then the bond was signed by you in error, you believing that you were liable? *Answer.* Yes, sir. I saw so many others signing it that I signed it. If I was to have been the first one to have signed it, I would have hesitated and asked questions about it, but seeing the other names I signed it. We sign these bonds as a matter of course, as one of the forms to get our goods, and on that we get paid for them by the insurance companies. It is one of the forms we think we have to go through to get our money. It was a good while after we had signed the bond,—some considerable time,—Mr. Coleman, the president of the Mechanics' & Traders' Insurance Company, informed me that they were taking our case against the Chambers as a test case; that there was some boat at fault; and they contended that all this average business was signed in error, and they were making our case a test case."

The agreement of the parties waived the approval of the "average committee."

As to the fault of the Chambers in causing the collision, there is only the testimony of the respective mates of the Chambers and Lowry, each for his own boat. The pilot of the Chambers having died, and the pilot of the Lowry being absent, their testimony was not avail-

able. · As between the two mates the more reliable is the testimony of the mate of the Chambers, as at the critical time he was on the roof of his boat, where he could have known what was going on, while the mate of the Lowry was, when the danger signals were given, in the hold of one of the barges in tow. But the showing made by both is unsatisfactory, and leaves the court in ignorance as to the fault of the collision.

The respondent having failed to invalidate the bond by showing that it was given in ignorance and error, and having waived the approval of the "average committee" by agreement, and having failed to show that the sacrifices and expenses incurred resulted from the fault of the libelants, it would seem clear that the libelant is entitled to recover. The respondent has availed himself of the bond to obtain his goods, and, as appears by the evidence, his money from the insurance company, and, having so availed himself of it, he shows no satisfactory reason for evading its obligations.

A decree similar in terms to that of the district court will therefore be entered in the case.