138   311
97a  ⁸570

</div>

## CONRAD v. DE MONTCOURT, *Appellant.*

### Division One, March 23, 1897.

1. Jurisdiction: GENERAL AVERAGE BOND.   A personal action upon a general average bond is not exclusively within the federal jurisdiction; but the state and federal jurisdiction are concurrent.

2. ——: ——: MARITIME LAW.   The common law as adopted by the people of Missouri embraces the principles of maritime law applicable to an action for breach of a general average bond.

3. ——: ——: ——.   The nature and effect of bonds to secure a marine average contribution discussed: *held*, that the bond in this case was not conclusive as to defendants' liability to contribute in general average, but that the signers thereof might show that they were not liable because of negligent navigation, causing the loss in question.

4. **General Average Bond.** A general average adjustment under the terms of an ordinary bond is conclusive as to the amount of the expenses, except as against fraud or mistake.

5. ———: ———: RELEASE OF LIEN. A shipowner has no right to demand unreasonable terms in a general average bond for the release of his lien upon a cargo.

6. ———: ———: NEGLIGENCE. The cargo can not be called on to contribute in general average toward any loss or expenses of the carrier occasioned by his negligence.

7. ———: ———: ———: COUNTERCLAIM. The owner of a cargo lost or damaged by negligent navigation on the part of the carrier may recover damages therefor as a counterclaim in an action for the freight.

8. **Pleading:** NEGLIGENCE. A general charge of negligence is good as a basis of proof unless objected to at the proper time, before trial.

9. **Written Instrument, Construction of.** The intent of an instrument is the controlling factor in its proper interpretation; and to ascertain it all its parts should be considered.

10. **Appeal:** SUPREME COURT JURISDICTION. Where defendants by a counterclaim demand damages in a sum sufficient to give the Supreme Court jurisdiction and are defeated by a peremptory instruction, their appeal lies to the Supreme Court.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

REVERSED AND REMANDED.

The bond mentioned in the opinion of the division is as follows:

"AVERAGE BOND.

"Whereas, The *steamer Nellie Speer, with the barge William Toll in tow,* whereof *Peter Conrad,* master, *said barge* having on board a cargo of merchandise, sailed from the port of *Barfield, Ark.,* bound for *Cairo, Ill.,* and, in the due prosecution of her said voyage, *met with disaster, by which said barge William Toll with her cargo of lumber was sunk,* by which means certain losses and

expenses have been incurred, and other expenses here-
after may be incurred in consequence thereof, which,
according to the usage of this port, constitute a general
average, to be apportioned on the said vessel, her earn-
ings as freight, and the cargo on board.

"Now, we, the subscribers, owners, shippers, con-
signees, agents or attorneys of certain consignees of
said vessel or cargo, do hereby, for ourselves, our exec-
utors and administrators, severally and respectively,
but not jointly, or one for the other, covenant and
agree to, and with *Peter Conrad, master of said steamer
Nellie Speer, having said barge in tow, and all others
whom it may concern*, that the loss and damage afore-
said, and other incidental expenses thereon, as shall be
made to appear to be due from us, the subscribers to
these presents, either as owners, shippers, consignees,
agents or attorneys of certain consignees of said vessel
or cargo, shall be paid by us, respectively, according to
our parts or shares in the said vessel, her earnings as
freight, and her said cargo, as shall belong or be con-
signed to us, or shall belong or be consigned to any
person or persons with whom we are copartners, agents
or attorneys, or in any manner concerned therein, pro-
vided such losses and expenses aforementioned be stated
and apportioned *by G. W. Dougherty*, average adjuster,
in accordance with the ESTABLISHED USAGE AND LAWS
OF THIS STATE in similar cases.   And for the true per-
formance of all and singular the premises, we do sev-
erally hereby bind ourselves, our respective heirs,
executors and administrators, to the said *Peter Conrad,
master of said steamer Nellie Speer, having said barge in
tow*, in the penal sum of *five thousand and twenty-eight
and* $\frac{80}{100}$ dollars lawful money of the United States.

"In witness whereof, we have to these presents set
our hands and seals, in the city of *Cairo, Illinois*, this

*25th* day of *June*, in the year of our Lord, one thousand eight hundred and *ninety-one*.

"DE MONTCOURT & O'HARA (Seal)."

The words printed above in italics were written into blank spaces; the rest of the bond was a printed form.

The items of expenses found by the adjuster and on which his adjustment of average, February 28, 1892, was based, are as follows:

| | |
|---|---:|
| Wages of the crew of the *Nellie Speer* | $ 353.34 |
| Subsistence of the crew of the *Nellie Speer* | 206.00 |
| Fuel consumed by the *Nellie Speer* | 120.00 |
| Extra labor | 33.00 |
| Use of hose for washing lumber | 6.25 |
| Marine protest | 5.00 |
| Committee assessing damage to lumber | 6.00 |
| Hire of barge | 132.00 |
| Hire of barge | 148.00 |
| Peter Conrad, for advancing $1,009.59 | 63.03 |
| Adjuster's fees | 25.00 |
| Total | $1,097.62 |

The adjuster charged $966.94 against the cargo of defendants' lumber and $130.68 against the freight.

The other material facts are stated in the opinion.

*Phillips, Stewart, Cunningham & Eliot* for appellants.

(1) The plaintiff was owner and master of the boat and barge, and had contracted and was bound to safely carry and deliver the cargo, unless prevented by act of God or the public enemy. He owed to the defendants the utmost efforts of himself, his boat and her crew to accomplish that result. Under these circumstances he can not become a salvor. Newson on Salvage, pp. 28, 29; 1 Conk. Adm. [2 Ed.], p. 345; *The Schooner Wave v. Hyer*, 2 Paine (U. S.), 131; *Miller v. Kelly*,

1 Abbott's Admiralty Rep. 564; *Kidney et al. v. The Ocean Prince*, 38 Fed. Rep. 259. (2) If, in the face of extraordinary peril during the voyage, the master had exacted from the owners of the cargo a promise of salvage or extra compensation for saving the cargo, and if the cargo had been saved by extraordinary exertions of the master and crew in consequence of such promise, no salvage or extra compensation could be claimed. Public policy does not permit such a claim. (3) When, on arrival of this cargo at destination, the plaintiff, as master, made pretense that there was a valid claim against the cargo, and that he would not deliver the cargo until that claim was secured, if defendants had paid him money in satisfaction of that claim, they could afterward sue him, and, upon showing that the claim was groundless, recover the money so paid. *Chamberlain v. Reed*, 13 Me. 357; *Geraldes v. Donison*, 1 Holt's *nisi prius*, Rep. 346. (4) If plaintiff had not been the carrier of these goods, and had been otherwise capable of becoming a salvor of them, still if his services as salvor had been rendered necessary by his negligence, he could not claim salvage. Newson on Salvage, p. 15, and cases cited. *The Charles E. Soper*, 19 Fed. Rep. 844; *The Krona*, 28 Fed. Rep. 318; *The Clarita, etc.*, 23 Wall. 1. (5) The barge on which this lumber was stored for carriage had no oars, sails, steam or other power of locomotion or movement. It was not a ship or vessel in contemplation of law. There was never during the voyage any "wreck" or peril which terminated the voyage or plaintiff's duty to carry the lumber to Cairo. (6) If there was a case of general average then ship, cargo and freight must be made to contribute, but in the adjustment of average which was made in this case, cargo and freight only were required to contribute and the ship was excused.

*David Murphy* and *Campbell & Ryan* for respondent.

(1) The court committed no error in admitting the two bills of lading in evidence. The evidence shows that Cross, the foreman of the Hickman Lumber Company, was the man in charge of this lumber for shipment on plaintiff's boat. It is elementary, that a man who entrusts business to another to transact for him, is bound by the act of the servant within the scope of the usual business confided to him, because the master is presumed to authorize and approve the known acts that are incident to such an employment. Story on Agency, sec. 56; *Squire v. R. R. Co.*, 98 Mass. 239. (2) One entrusted with the shipment by a steamboat, is expected, in the usual course in such employment, to take a bill of lading from the carrier. Story on Agency, sec. 127; *Nicholson v. Golden*, 27 Mo. App. 132. (3) To entitle defendant to an admission of such testimony, he should state the acts out of which the injury grew, with a reasonable degree of particularity, and then it may be averred generally that such acts were negligently done. *Waldhier v. R. R. Co.*, 71 Mo. 514; *Gurley v. R. R. Co.*, 93 Mo. 445; *Dickson v. R. R. Co.*, 104 Mo. 502. (4) This is not a claim for salvage, as the learned counsel seem to think, but it is a claim for extraordinary expenses incurred for the common benefit. The law is well settled in this country that such expenses come under the law of general average. Parsons, Shipping and Admiralty, pp. 385, 386–432. In *McAndrews v. Thacher*, 3 Wallace, page 365, Justice CLIFFORD said: "Extraordinary expenses incurred for the joint benefit of ship and cargo, and which become necessary in the consequence of a common peril, are usually regarded as the proper subjects of general average." See, also, *Dilworth v. McKelvy*,

30 Mo. 149.   The point made that if there was a case
of general average, then ship, cargo and freight must
be made to contribute, is not sound, for in the adjust-
ment of a general average, where the claims are founded
on expenses, only that part of the property for the
benefit of which the expense was incurred contributes.
See 1 Parsons, Admiralty and Shipping, pp. 435–465;
*Thacher v. McAndrews*, 3 Wallace, 347.

BARCLAY, P. J.—Plaintiff's action against the de-
fendants, Messrs. De Montcourt and O'Hara, relates to
a shipment of lumber by water from certain points on
the Mississippi river to Cairo, Illinois.

The petition is in two counts.   The first count sets,
forth a claim by plaintiff as owner of the steamboat
*Nellie Speer* and barge *William Toll*, for freight earned
in carrying 298,202 feet of lumber, at the instance of
defendants, from Tyler, Missouri, and Barfield, Arkan-
sas, to Cairo, in July, 1891, at the rate of $2.50 per
thousand feet, which rate defendants are said to have
promised to pay.

The second count is for part of the expenses in-
curred by plaintiff "in the salvage of the freight and
cargo on board said barge," by reason of which (it is
alleged) defendants "at Cairo, Illinois, promised to
pay to plaintiff the loss and damage aforesaid, and the
incidental expenses thereon, as should be made to ap-
pear to be due from said defendants, according to their
part or shares in the said cargo of lumber," "provided
that such losses and expenses be stated and appor-
tioned by G. W. Dougherty, average adjuster, in ac-
cordance with the established usage in that vicinity in
similar cases."   The count then proceeds to allege that
said losses and expenses were apportioned and adjusted,
in accordance with the law of general average and the
said established usage, by said adjuster, by a "writing

called an average bill," duly filed, and wherein defendants' proportion of contribution toward said expenses, etc., was stated to be $966.94; but that defendants had refused to pay the same, after having due notice.

The answer denies the facts of the petition, and sets up a counterclaim, the basis of which is that plaintiff undertook to carry for defendants 314,078 feet of lumber to Cairo for $2.50 per thousand, and received the same in good order and condition. The concluding part of the answer is as follows:

"Defendants say that the plaintiff violated the said contract and failed to deliver any of said lumber in good order or condition, but on the contrary, lost or destroyed 18,134 feet thereof, and delivered the balance thereof, to wit: 295,944 feet, and no more, to defendants at Cairo in a greatly damaged condition. Defendants say that the lumber, so lost or destroyed by the plaintiff and not delivered to defendants, was worth twenty-two and a half dollars ($22.50) per thousand feet, amounting to $408, and that the said 295,944 feet of said lumber delivered to defendants were by reason of water, sand and mud negligently put and left thereon by the plaintiff, and by reason of the negligence and carelessness of the plaintiff, damaged to the extent of ten dollars per thousand feet, amounting to $2,959.44; and that by reason of the premises defendants have been damaged in the sum of thirty-three hundred and sixty-seven and $\frac{44}{100}$ dollars ($3,367.44), for which sum with their costs defendants pray judgment against the plaintiff."

The plaintiff's reply alleges (in substance) that the contract of shipment was evidenced by bills of lading (filed) and that his liability as carrier was thereby so limited as not to include loss or damage to the lumber by reason of the dangers of navigation or of known and unknown obstructions in the river. The reply then

proceeds to state that the steamer and barge were both sound and seaworthy at the outset; that while they were proceeding up the river, in the usual channel, in a careful manner, the barge ran upon, or struck, a hidden obstruction, unknown to plaintiff, his officers and agents; that said collision "was without any fault and negligence or want of care on the part of plaintiff or his officers and agents, and that as a direct result of said collision the said barge *Toll*, laden with defendants' lumber, was sunk in the Mississippi river, but a large portion of her said cargo of lumber was not submerged or damaged at all; that as a direct result of said collision of said barge with said hidden obstruction in said river, a portion of her cargo of lumber was unavoidably submerged in the river with said barge, without fault or negligence of plaintiff or his officers and agents; that thereupon plaintiff, without negligence or loss of time, procured necessary assistance as speedily as possible, and by means of said assistance and the efforts of the officers and crew of plaintiff, succeeded in saving said cargo of lumber from said barge *Toll*, and without unnecessary delay carried said lumber, amounting to 298,202 feet, and delivered same to defendants at Cairo; and plaintiff expressly denies that any of said lumber so delivered was damaged in any respect by his negligence or want of care; and that whatever loss or damage was suffered by defendants by reason of water, sand or dirt, if any, which plaintiff does not admit, was the direct result of the sinking of said barge *Toll* by coming in contact and collision with said hidden and unknown obstruction in said Mississippi river, which was one of the perils of the river navigation especially excepted, in and by said contracts of affreightment as evidenced by said bills of lading." Plaintiff further denied that he was indebted or liable

to defendants as alleged in their said answer and counterclaim, or on any account.

The cause was tried with the aid of a jury.

The facts were not as fully developed at the trial as the defendants desired, owing to the exclusion of testimony which they offered.    That ruling forms the most important subject for treatment on this appeal.

·It appears that defendants shipped a large amount of lumber to Cairo under an agreement with plaintiff. The lumber was loaded on plaintiff's barge, which was being towed up the river by his steamer, the *Nellie Speer*, when the barge came into contact with something beneath the surface of the river, and sprung a serious leak.    Being in danger of sinking, the barge was guided to shoal water, where a temporary lodgement was found for it.    The barge, partly submerged, was made fast to the shore and watchmen left there, while the steamer *Speer* (which, at the time of the mishap, was in the personal charge of plaintiff) hastened off to Cairo for aid.    On arriving there, plaintiff entered a marine protest, and engaged two barges to rescue defendants' lumber.    He then returned with the steamer and these barges to the wreck and took off the lumber, loading the latter on the hired barges.    The first barge, the *Toll*, was abandoned where it lay.    But, according to plaintiff's account, all of the defendants' lumber was saved, brought safely to Cairo, and· delivered to them on their giving to plaintiff an average bond.    These steps taken by plaintiff involved most of the items of expense mentioned in the adjustment.

There is no serious dispute as to these facts.    But the trouble at the trial arose in determining the effect to be given to the average bond.

On the cross-examination of plaintiff's witnesses, defendants opened up a line of inquiry intended to imply that the wreck of the barge and the resulting

damage were caused by negligent navigation.    No
objection was then interposed by plaintiff's counsel
to that investigation.    But when defendants got into
their part of the case, they offered to show the bad
condition of the lumber when delivered, and also
offered to prove that the entire loss and damage were
occasioned by negligence on the part of plaintiff and
his agents in managing the steamer and barge.    The
learned trial judge rejected these offers of defendants,
on the general ground that all those matters were con-
cluded by the signing of the average bond.

The court later instructed the jury that defendants
were not entitled to recover on their counterclaim; and
the law was further declared to be that "in signing
said bond to and with plaintiff, defendants agreed that
said steamboat and barge, while in due prosecution of
her voyage, met with a disaster by which said barge
and cargo were sunk in the said river, by which means
certain losses and expenses had been incurred, and
other expenses might thereafter be incurred in con-
sequence thereof, and that such expenses, according to
the usage of said port, constituted a general average,
and that they, the defendants, would pay their share of
said expenses, as should be stated and apportioned by
G. W. Dougherty, average adjuster, in accordance with
the established usage and laws of the state of Illinois in
similar cases."

Defendants saved exceptions to those rulings and
instructions, and kept the points alive by a motion for
new trial, after the verdict for plaintiff, which natu-
rally resulted in the circumstances.    Defendants ap-
pealed in due course.

1.    The defendants' counterclaim (on which they
were defeated by a peremptory instruction) demands
damages in a sum large enough to give the Supreme

Court jurisdiction. A counterclaim may properly be considered in ascertaining the "amount in dispute," as meant by the constitutional language defining the jurisdiction of the Supreme Court.

2. The controversy presented by the demand for an average contribution is maritime in nature. (*Dike v. The St. Joseph* (1855) 6 McLean, 573); but it is not on that account exclusively within the federal jurisdiction. By the judiciary act of 1789, there is a "saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it," in civil causes of admiralty and maritime jurisdiction (R. S. U. S. 1874, sec. 563).

The action at bar is a personal one based upon the contracts already described. The damages claimed for breaches of those contracts are recoverable in an action at law, although (as will presently be seen) the reciprocal rights of the parties are to a large extent determined by principles of the maritime law. Those principles, however, are regarded as part of the general common law of England. *Leon v. Galceran* (1870) 11 Wall. 185; *Strang v. Scott* (1889) 14 App. Cas. 601. The people of Missouri adopted and incorporated in their system of jurisprudence that common law at an early day (1 Terr. Laws, p. 436, ch. 154, sec. 1; R. S. 1889, sec. 6561). Congress, even at an earlier date, had sanctioned common law proceedings in the territory. 1 Terr. Laws, p. 12, sec. 14. The Supreme Court of this State has treated such maritime subjects as properly within the State jurisdiction. *Dilworth v. McKelvy* (1860) 30 Mo. 149.

3. The learned trial judge considered and held that the average bond was conclusive upon the defendants as to their liability for the freight, as well as for a share of the extraordinary expenses incurred by plaintiff in saving the cargo of lumber. That view we

regard as erroneous. Such bonds have a recognized place in the law of general average, and many of their terms have acquired meanings which must now be considered as fixed and definite. One object of such a bond is to secure to the owner of the vessel payment of charges for which he has a lien at the time the bond is made. When such charges are yet under adjustment, neither shipowner nor cargo owner is usually in position to demand or to tender specific amounts that may be justly payable. In such case the bond stands in place of the goods released by the shipowner when it is given. The shipowner has no right to demand unreasonable terms in such a bond, and if he does, his act is liable to judicial review and correction. *Huth v. Lamport* (1886) 16 Q. B. D. 735; *Wellman v. Morse* (1896) 76 Fed. 573.

An average bond (properly drawn, in accordance with the principles which at this day should shape such an instrument) does not absolutely conclude the signer, when owner of the cargo, as to his liability to an average charge. It does, however, generally bind him to the adjustment of the expenses by the adjuster, nominated in the bond, except as against fraud or mistake in the adjustment. *Fowler v. Rathbones* (1870) 12 Wall. 102; *Belt v. Gumbel* (1884) 24 Fed. 383.

Notwithstanding the bond, the cargo owner ordinarily may show negligence in the handling of the vessel, and that the damage resulted therefrom. On that showing he is not liable to contribute toward repairing a loss sustained by the interest chargeable with the negligence, where the average bond conforms to any of the models sanctioned by the maritime usages of England. Lowndes, Gen. Average [4 Ed. 1888], p. 30. And the same rule prevails in this country. *The Niagara* (1858) 21 How. 7; *The Alpin* (1884) 23 Fed. 815; *The Nicanor* (1889) 40 Fed. 361; *Forace v. Salinas*

(1892) 49 Fed. 878; *Bowring v. Thebaud* (1892) 56 Fed. 520; *Pacific Mail Co. v. Mining Co.* (1896) 74 Fed. 564.

It certainly is a recognized general proposition of maritime law that if a loss to the cargo occurs by a peril of navigation, which might have been avoided by ordinary care on the part of the carrier, the latter can not justly call upon the owner of the cargo to help him bear any part of the loss so occasioned. *Grill v. Iron Screw Collier Co.* (1866) L. R. 1 C. P. 599; *The L'Amerique* (1888) 35 Fed. 835; *The Ontario* (1889) 37 Fed. 220; *Snow v. Perkins* (1889) 39 Fed. 334.

The average bond before us does not by its terms preclude all examination into the question of defendants' liability to contribute toward making good the loss. If it did, it might then be necessary to consider how far such stipulations would be held binding on defendants in dealing with a claim against them for an average contribution, based on principles of the maritime law.

The preamble of the bond, standing alone, might, perhaps, be construed to close the question of defendants' liability to contribute; but the more definite language of the substantial part of the instrument clears away the possibility of such a construction. The intent expressed in the bond is the controlling factor in reaching its proper interpretation; and in getting at that intent all parts of the instrument should be considered. The bond declares that the obligors shall pay such loss, damage and expenses "as shall be made to appear to be due from us," provided the said losses and expenses "be stated and apportioned by" the adjuster named.

The adjuster's duty is thus defined to be the statement (and apportionment in average) of the loss and expenses. He was not appointed as an arbitrator to

decide whether the case was one for average; that was yet "to be made to appear," according to the terms of the bond itself. So that the document can not correctly be held to express an intent to bar inquiry as to plaintiff's negligence, which defendants insisted on going into at the trial, and for which the pleadings afford a proper basis.

4. The answer directly charges that plaintiff as carrier lost or destroyed part of defendants' lumber, specifying it. That furnished a foundation for a claim for damages, if true and unexplained. And then it is further alleged that the lumber actually delivered to defendant was, "by reason of water, sand and mud negligently put and left thereon by plaintiff, and by reason of the negligence and carelessness of the plaintiff, damaged to the extent of ten dollars per thousand feet," etc.

A general charge of negligence is good as a basis for proof unless objected to at a proper time, before trial. *Schneider v. Railroad* (1882) 75 Mo. 295; *LeMay v. Railroad* (1891) 105 Mo. 361 (16 S. W. Rep. 1049).

Moreover, the plaintiff obviously understood fully the extent and object of the charge of negligence, for his reply thereto is full of statements denying that charge in various forms. So that the issue of plaintiff's negligence was plainly raised by the pleadings and should have been fully investigated at the trial. If the charges preferred by defendants on that score were substantiated by proof their counterclaim would be valid, and plaintiff would not then be entitled to maintain any claim whatever for an average contribution.

It is evident that there must be another trial of the cause, and to that end the judgment is reversed. MACFARLANE and BRACE, JJ., concur. Judge ROBINSON is absent.