PRICE TUCK, Respondent, v. SPRINGFIELD TRAC-
TION COMPANY, Appellant.

**Springfield Court of Appeals, January 10, 1910.**

1. **PLEADING: Objections to Petition.** Although a petition
may not be artistically drawn nor very specific as to the charge
of negligence, yet where it is sufficient to apprise the defendant
of the acts complained of and no objection was made to it until
after the answer was filed, it will be held sufficient after judg-
ment.

2. **NEGLIGENCE: Question for Jury.** Where the evidence is
conflicting as to the existence of negligence the question is
peculiarly and exclusively for the jury to determine.

3. **PRACTICE: Objectionable Remarks of Counsel: When Not
Reversible Error.** Although the remarks of an attorney before
the jury are reprehensible and the court committed error in
failing to reprimand him and in permitting him to continue
along the same line, yet this error will not result in reversing
the case when not materially affecting the merits of the case,
and the verdict is for the right party.

Appeal from Greene Circuit Court.—*Hon. A. H. Wear,*
Special Judge.

AFFIRMED.

*Delaney & Delaney* for appellant.

(1) The petition does not state a cause of action
and the objection to the introduction of any evidence
as well as the motion in arrest of judgment should
have been sustained. Brown v. Cape Girardeau, 90
Mo. 377; Maker v. Faulhaber, 94 Mo. 430. (2) The
remark by the court during the progress of the trial
was a comment on the evidence and unwarranted. Eck-
hard v. Transit Co., 190 Mo. 620; Shanahan v. Transit
Co., 109 Mo. App. 228; Imboden v. Transit Co., 111
Mo. App. 220. (3) The remarks and conduct of Mr.
Davies, counsel for plaintiff, in his argument to the

jury, are certainly without precedent.   It is inconceivable that the Judge, *nisi,* should allow such conduct and language to go unchallenged.   Reeder v. Studt, 12 Mo. App. 566; Marble v. Walters, 19 Mo. App. 134; Gibson v. Zieberg, 24 Mo. App. 65; Ensor v. Smith, 57 Mo. App. 596; Smith v. Tel. Co., 55 Mo. App. 634; Leu v. Transit Co., 106 Mo. App. 329; Estes v. Railway, 111 Mo. App. 1; Miller v. Dunlap, 22 Mo. App. 97; McDonald v. Cash, 45 Mo. App. 80; Bishop v. Hunt, 24 Mo. App. 377; Killoren v. Dunn, 68 Mo. App. 212; Rice v. Sally, 176 Mo. 107; Haynes v. Trenton, 108 Mo. 133; Evans v. Trenton, 112 Mo. 390; State v. Lee, 66 Mo. 165; State v. Barham, 82 Mo. 67; State v. Ferguson, 152 Mo. 92; State v. Warford, 106 Mo. 55; State v. Riley, 4 Mo. App. 392; Norton v. Railroad, 40 Mo. App. 642; Halliday v. Jackson, 21 Mo. App. 660; Morgan v. Durfee, 69 Mo. 469; Clark v. Fairley, 30 Mo. App. 335; Beck v. Dowell, 111 Mo. 506.

*D. W. Davies, O. T. Hamlin, J. T. Devorss* for respondent.

STATEMENT.—This was an action for damages commenced in the circuit court of Greene county.    The part of the petition charging negligence is as follows:

"That on the 15th day of February, 1908, the said Price Tuck, accompanied by his brother, Claude Tuck, was driving a team of horses and buggy, north on said Boonville street, and at the intersection of Calhoun street, while they were driving along and using due care and caution on their part, the servants, agents and employees of defendant negligently, carelessly and recklessly ran, managed and controlled a car of the defendant, which was going north on said Boonville street, being car No. 73.    That it ran into and struck the said Price Tuck without signal or warning and he was thrown to the ground and dragged for some forty or fifty feet along said street, by said car, and was injured as follows:

"That two of the bones of his foot were broken; the leaders of his left foot were torn loose from his heel; that his face was lacerated, bruised and torn; his body was bruised and he was injured in his back, limbs and head and injured internally; that he suffered great and excruciating pain of mind and body, and, that the injuries are permanent, and that he was and is damaged in the sum of four thousand dollars."

The answer of the defendant is a general denial.

The accident complained of in plaintiff's petition, occurred on a drizzly afternoon in February, 1908, on Boonville street in Springfield, Missouri, and was caused by the collision of a car belonging to the Springfield Traction Company, the defendant in the court below. Price Tuck, with his brother Claude, had started home in a two-horse, top-buggy and were driving north on Boonville street, close to and parallel with defendant's street car track. The buggy top was up and the curtains down. There was a small lookout glass in the rear curtain which was clouded by the mist according to the testimony. The evidence is that they looked out from time to time to see whether there was any car behind them. The result of the collision—which took place between Center and Calhoun streets by a car going in the same direction as that taken by the plaintiff—was that the four wheels of the buggy were broken to pieces —every spoke broken out—the buggy was turned over on the horses and the team and buggy were dragged about fifty feet. The evidence for the plaintiff tended to show that the gong was not sounded, or, if it was, that it was so out of repair and in such a condition that it could only be heard a short distance from the car; that just before the car started on this trip, parties were seen working at the gong underneath the car. The evidence of some of the witnesses for the plaintiff tended to show that the car never slacked up at all until it struck the buggy.

140 App.—22

The evidence for the defendant tended to show that the motorman only saw the team a short while before the car struck the buggy,—at a distance of about forty or fifty feet; that the front part of the car did not come in contact with the buggy.

The motorman testified that before he came up with the buggy, he was ringing the gong and threw the power off and that the car was "drifting;" "and when I got even with the team, I released the brake and put on the power." He stated that the team was in safety when the front of the car passed; that there was no fender on the car. "I don't know whether they backed into me or not. The front end was in the clear and they were driving along after the car struck. I guess they began to run when the step of the car struck the buggy. At that time I was running eight or nine miles an hour. At that speed I could stop in about thirty feet. As I crossed Calhoun street, the team was driving along the east side of the track and about forty or fifty feet north of me. They were not quite to the blacksmith shop. The accident happened along about the shop. I don't remember a team hitched to a telephone pole north of this shop; I don't remember if I saw it. I saw them drive in towards the track, but I don't know whether they drove around this team or not. At the time they drove towards the track, I must have been fifty feet behind them and was running eight or nine miles an hour and had the slack up and the car under control. The brakes were in good shape. They drove around whatever that was and then started on up the street and I ran up to the side of them and the front end of the car cleared the buggy. I took it for granted that it was all right and turned on my power to go on."

Another witness for the defendant testified that he was on the car, and that just as the motorman got opposite the driver of the buggy, he tapped the gong once and looked at them, and that at this time, the

car was clear in front. "As he tapped the gong, he threw on his power and turned his brake loose." That the left horse's nose was almost up to the window at this time. "It seems to me that the boys—when the motorman tapped the gong—was the first indication they had that the car was there. The horses kind of jumped a little and moved as though the lines had been loose, and the driver grabbed them to hold the team and jerked the horses and pulled them right up to the car."

Other witnesses for the defendant testified that they heard the gong ringing for a considerable distance before the car struck the buggy; also that before the car reached the buggy, the horses were "cutting up," and that just before the car struck, the horses were reined in towards the car.

There was a judgment for the plaintiff for six hundred dollars from which the defendant prosecutes this appeal.

NIXON, P. J. (after stating the facts).—

I.   One of the grounds assigned as error in this case is that the petition is not sufficient and that the allegations are too general to authorize a recovery.

It is to be noted that no objection was made to the petition until after answer had been filed, and that the objection then only went to the introduction of evidence. While some objection may be justly made to the form of the petition as not being very artistic, it is sufficient to apprise the defendant of the acts complained of and upon which its culpability rested. It is true that the petition is not very specific, but generality in the charge of negligence is not a fatal objection after the filing of an answer. [Foster v. Missouri Pacific Ry. Co., 115 Mo. loc. cit. 177, 21 S. W. loc. cit. 919; Conrad v. De Montcourt, 138 Mo. 311, 39 S. W. 805; Durham v. City of Bolivar, 106 Mo. App. 601,

81 S. W. 463; Mack v. St. Louis, K. C. & N. R. Co., 77 Mo. 232; Shaw v. Missouri Pacific Ry. Co., 104 Mo. 648, 16 S. W. 832.]

It is also noted that this petition is not alone confined to a general charge of negligence, but it sets out in what the negligence consists in a manner sufficient to apprise the defendant of the particular and special negligence upon which defendant's liability was sought to be established. It specifically charges that the servants of the defendant negligently ran a car of the defendant and struck the plaintiff without any signal or warning. This would be a sufficient statement in the absence of any attack by a motion to make the petition more specific. If the defendant was in any doubt as to the particular nature of the charge made, the law has provided an ample remedy by which the defendant would have been enabled to ascertain the particulars and would have been enabled to prepare its defense. But the defendant seemed satisfied and was able to make a very complete defense, and only brought to the attention of the court the defect, if any, in the petition, after the trial had in fact commenced. This is a practice not to be commended. We find that the petition was entirely sufficient to sustain the verdict.

II.    Some complaint is made about a certain remark of the trial judge during the introduction of evidence. Evidence was being introduced as to whether plaintiff's counsel was receiving a contingent fee for the prosecution of the case, and the trial judge made the casual remark that it was probably the usual fee. We think that the attempt to raise this trivial objection to the magnitude of an assignment of error is an illustration of a gigantic effort to make a mountain out of a mole-hill.

III.    The further objection is urged that there was no proof sufficient to warrant a verdict as to the negligence of the defendant. We think this view can-

not be seriously entertained when the evidence is examined in this case. There is abundant evidence tending to show the liability of the defendant and that the plaintiff was exercising proper care at the time the accident occurred. The evidence, it is true, was conflicting. In such cases, we cannot invade the constitutional right of trial by jury. The weighing of the evidence and the credibility of the witnesses is committed by law to the jury. The existence of negligence is a fact to be proved, and whether negligence or care exists in a given case is peculiarly and exclusively for the jury to determine. [Cook v. Missouri Pacific Ry. Co., 19 Mo. App. 329; McPheeters v. Hannibal & St. J. R. Co., 45 Mo. 22; Yarnall v. St. L. & K. C., S. R. Co., 75 Mo. loc. cit. 583; Burger v. Missouri Pacific Ry. Co., 112 Mo. 238, 20 S. W. 439, 34 Am. St. Rep. 379.]

IV.　Some objection is also made to the instructions given in this case. Upon the most careful examination, we find that such objection is untenable and that the trial judge in this case gave the defendant all the instructions it was entitled to, and that no just criticism can be made on that account.

V.　The only question remaining of sufficient magnitude to deserve attention relates to the remarks of D. W. Davies, attorney for the plaintiff, during the trial of this case. It is claimed that the remarks and conduct of Mr. Davies in his argument to the jury are without precedent and that the judge trying the case should not have allowed such conduct to go unchallenged. Among other statements made by Mr. Davies, the following language was used:

"Mr. Delaney has not tried this case fair and does not want the facts to come out. At the start he commenced objecting and objected all through the case and all through the case was asking the court to reprimand us. Mr. Delaney objected to every question we asked. That is his defense. He objected and objected and objected. It is an outrage—that kind of an exami-

nation—and ought not be tolerated in this State or any other State." Mr. Delaney then said: "Your honor, we object to such argument. We had a right to object to evidence and we ask the court to so state to the jury." The court declined, whereupon Mr. Davies continuing, said: "Mr. Delaney is still objecting. Then we put back on the stand a man who saw them working on the gong, trying to get it to ring before he started. What does that mean? Mr. Delthrow says that they were working on it trying to get it to ring. He got down and looked under the car and was working on it, and there is the time that the other side was objecting."

"They did object to it and it went in and it is before the jury right now and you can't bluff anybody off the track in this case. You have tried it all the way through. You tried it from the start. At the very outset of the case, you tried it. You have tried to be unfair." Over the objection and exception of counsel for defendant, counsel for plaintiff was allowed to proceed without restraint, admonition or reprimand.

We have made these quotations as examples of the language the trial judge allowed the attorney for plaintiff to use before the jury. It is unnecessary for us to say that such remarks and conduct are reprehensible in the highest degree, and that the court should not only have admonished the attorney to desist, but, if he continued, should have reprimanded him, and if this did not prove sufficient, should have punished him for contempt of court. One of the first duties of the judge of a trial court is to preserve order and require that the attorneys as well as other persons should, by their behavior, show a decent respect for the court and for the opposing counsel. We quote with approval in this connection the language of Judge GANTT in the case of Haynes v. Town of Trenton, 108 Mo. loc. cit. 133, 18 S. W. 1003. He said: "The disposition of this court is to permit the greatest latitude in the argument

of a cause to a jury. But its disposition to trust largely to the discretion of the trial courts must not be construed that we will, on that account, tolerate the clear disregard of a litigant's right to have his cause heard and tried according to the law of the land. The conduct of counsel for plaintiff in making these and similar statements can not be excused. Counsel will not be permitted to wring verdicts from juries by statements extraneous to the record, and rely upon our disinclination to interfere."

And in this case, we have to say that error was committed; but while we find that such was the case, upon a careful consideration we have concluded that outside of the objectionable remarks and conduct of counsel, the verdict of the jury was for the right party, and, as we are prohibited from reversing cases unless there was error in the trial court materially affecting the merits of the case, we have decided that although the remarks were exceedingly objectionable and should have received at the hands of the trial judge the severest condemnation, yet on that ground alone, the verdict being for the right party, we cannot reverse the judgment, and the same is accordingly affirmed. All concur.