# FRANKLIN v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY, Appellant.

### Division One, May 24, 1905.

1. **NINE-JURY LAW: Constitutional.** A verdict concurred in by nine jurors in a civil trial in the circuit court is a valid verdict and no constitutional right of a defendant is violated by an instruction telling the jury that nine of their number can render a verdict.

2. **NEGLIGENCE: Preponderance of Evidence: Appellate Practice.** Where there is substantial evidence to sustain plaintiff's charge of negligence and also substantial evidence to show that defendant was not negligent in the manner charged, and the jury has returned a verdict for plaintiff, and its finding has received the approval of the trial court, the appellate court will not interfere. Unless the verdict is the result of prejudice or passion, the appellate court will not interfere with the jury's finding of fact, whatever may be its views as to the fair preponderance of the evidence.

3. ———: **Stopping Car at Far Crossing: Ordinance: Custom.** If a passenger signaled the car to stop at a certain crossing to let her off, and the custom of the car was to stop, not at the far crossing of the street, as the ordinance required, but often before it reached the far crossing, and she knew of that custom,

she had a right to suppose that it stopped where it did for the purpose of letting her off, if there was nothing to show a contrary reason; and an instruction which states that the car was stopped at the side of the street first reached "for the purpose of allowing her to alight," etc., cannot be said to be without evidence to support it.

4. **INSTRUCTIONS: Refusing Correct Ones.** It is not error to refuse an instruction which in effect is but a repetition of others given for both sides.

5. **REMARKS OF COUNSEL: Opprobrious Epithets.** The venting of opprobrious epithets by counsel, such as unnecessarily calling a witness a perjurer and a villian in his heart, and unwarrantly stating that he had been tricked by opposite counsel's refusal to call to the stand a witness they had subpoenaed, should be corrected by the trial court as a breach of decorum and an offense against the dignity of the court, but are not ordinarily a ground of reversal.

Appeal from St. Louis City Circuit Court.—*Hon. Jno. A. Talty,* Judge.

AFFIRMED.

*Jefferson Chandler* and *J. Lionberger Davis* for appellant.

(1) The court erred in not granting defendant's instruction in the nature of a demurrer to the evidence. Jackson v. Railroad, 118 Mo. 199; Beach on Contributory Negligence, sec. 161, pp. 235-6; Olfermann v. Railroad, 125 Mo. 408; Railroad v. Calderwood, 89 Ala. 247; Duncan v. Railroad, 48 Mo. App. 659. (2) The court erred in permitting Dr. Niedelet, plaintiff's physician and witness, to answer an improper question. Hitchcock v. Bargett, 38 Mich. 501; Kempsey v. McGinniss, 21 Mich. 138; Van Dusen v. Newcomer, 40 Mich. 120; Neudeck v. Grand Lodge, 61 Mo. App. 107; Wood v. Carpenter, 166 Mo. 487; Greenleaf on Evidence (16 Ed.), p. 560; State v. Palmer, 161 Mo. 152; Goss v. Railroad, 50 Mo. App. 623. (3) The court erred in refusing to give defendant's instruction marked "C." Shareman v. Railroad, 103 Mo. App. 515; Pitcher v. Railroad, 174 Pa. St. 402.

*John J. O'Connor* for respondent.

(1) Where there is any evidence in support of the allegations of the petition and such allegations charge a liability on the defendant, an instruction demurring to the evidence should be refused. Dorsey v. Railroad, 83 Mo. App. 528; Steube v. Railroad, 85 Mo. App. 640; Reed v. Railroad, 94 Mo. App. 731; McElroy v. Ford, 81 Mo. App. 500; Pauck v. St. Louis Dressed Beef and P. Co., 159 Mo. 479. Nor will an appellate court review the evidence, when there is any substantial evidence in favor of the finding of the jury, to determine on which side the weight of the evidence lies. Redman v. Adams, 165 Mo. 60; Blanton v. Dold, 109 Mo. 64; Temple v. Railroad, 83 Mo. App. 64; Colyer v. Railroad, 93 Mo. App. 147; Plow Co. v. Sullivan, 158 Mo. 440; Chitty v. Railroad, 166 Mo. 438. Nor is the testimony of Dr. Niedelet open to the objections urged against it by defendant. The facts on which he based his opinion were sufficiently shown to the jury to enable the jury to determine his knowledge of plaintiff's physical condition, and the value of his opinion thereon. Smiley v. Railroad, 160 Mo. 629. (2) Where the instructions given fairly present defendant's theory of the case, it is not error to refuse others which contain nothing to which defendant is entitled that is not contained in the instructions given. Connolly v. St. Joseph Press Printing Co., 166 Mo. 447; Dixon v. Atkinson, 86 Mo. App. 24; Ridenhour v. Railroad, 102 Mo. 270. (3) Plaintiff's counsel in his address to the jury had a right, on the testimony of Miss Cord and plaintiff, given in rebuttal, to denounce the testimony of defendant's witness Brooks. State v. Hyland, 144 Mo. 302; State v. Summar, 143 Mo. 220. The power to control counsel in their argument to the jury is wisely vested in the discretion of the trial court. The trial judge sees the acts of the parties and their counsel during the trial, and hears all the evidence as well as all

the remarks of both counsel. He is, therefore, better able than an appellate court to determine whether or not the remarks of a counsel, objected to, are unprovoked, unsupported by the evidence or improper. And where the trial judge refuses a new trial on account of such remarks, unless in doing so he abuses his discretion, the appellate court will not interfere. Huckshold v. Railroad, 90 Mo. 558; Sidekum v. Railroad, 93 Mo. 407; Loyd v. Railroad, 53 Mo. 509; Hoffmann v. Hoffmann, 126 Mo. 486; Cullar v. Railroad, 84 Mo. App. 340; Wright & Orrison v. Brown, 68 Mo. App. 585.

VALLIANT, J.—This is an appeal from a judgment for $2,500, rendered May 20, 1902, in favor of plaintiff, on a verdict for that amount concurred in by only nine of the jury. Defendant in a motion for a new trial made the point that an instruction given the jury by the court to the effect that nine of their number could return a verdict was in violation of defendant's right to trial by jury as guaranteed by the Constitution of this State and of the United States. In Gabbert v. Railroad, 171 Mo. 84, decided December 24, 1902, that subject was put at rest, and since then a question as to the validity of our constitutional amendment authorizing three-fourths of the jury to render a verdict in a civil case in a court of record has not been regarded by us as a live question. But as the appeal in this case was taken before the decision in that case it was properly taken to this court and we will entertain jurisdiction of it.

It is only necessary for us now to say that no constitutional right of defendant was violated in the action of the court in giving the instruction above referred to or in receiving the verdict in which only nine of the jury concurred.

Plaintiff fell while in the act of alighting from one of defendant's street cars and received personal injuries. The petition states that the car had stopped

to allow her to alight, and while she was in the act of doing so it was negligently started and she was thereby thrown to the ground. The answer was a general denial and a plea of contributory negligence.

The testimony on the part of plaintiff was to the following effect:

The defendant operates a street railroad extending from Fourth street out to the western city limits and beyond; a part of the route is through Manchester avenue, which in its main course runs east and west and across Knox avenue. What is called Knox avenue is far out towards the western suburbs and is really a very short unimproved street; it begins at Manchester avenue and runs south only two or three squares; north of Manchester avenue there is no street at that point, it is an open field. But on the north side of Manchester avenue, on a line with the west line of Knox avenue, is a street lamp and there is a brick walk crossing Manchester avenue on that line. Street cars going west usually stop with the rear platform at that brick walk, but not always; they sometimes and not unfrequently stop from fifteen to thirty feet east or west of the brick walk to discharge or receive passengers. The accident in question occurred on the evening of December 6, 1901, about five o'clock, when it was dark or nearly so.

Plaintiff as a witness in her own behalf testified that on the evening in question she was returning home in one of defendant's cars and that as the car approached Knox avenue she gave the signal to indicate that she wished to stop at that point, the conductor gave the signal to the motorman and the speed of the car began to slow down and while it was so slowing down she arose and walked out on the rear platform where the conductor was. She said the car "was just on the point of stopping when I went to the door. I was not there a half a second when it stopped, and when it came to a perfect standstill. I walked to the steps

and had my foot just in the act of stepping down when it jerked and threw me from the car and I knew nothing that happened after that, for I was perfectly unconscious.'' The point where she fell was about the middle of Knox avenue, that is, about thirty feet east of the brick walk above mentioned. There were two boys, fourteen years old, standing on the brick walk near the lamp post who testified that the car stopped before it reached the brick walk and started again and caused the plaintiff to fall from the step into the street. Each boy testified, however, that he was looking west when the car approached and did not notice it until some one said that the lady had fallen, then he turned around and looked. They testified that the car stopped first with the front end at or near the brick walk, then started again and stopped with the rear end fifteen feet west of the brick walk. The evidence tended to show that the plaintiff received serious injuries, she was lifted up in an unconscious condition and carried into a little house used by the watchmen on the Missouri Pacific railway which was near.

The testimony for the defendant tended to prove as follows:

The motorman testified that as he approached Knox avenue he received the conductor's signal to stop at that point and in due time he slowed down and stopped his car with the rear platform at the brick walk; he waited for the signal to start but not receiving it as expected he looked back and saw them helping a lady to arise, he opened the gate on the platform and walked back and on inquiry was informed that the lady had fallen off or had jumped off the car. He testified that there was but one stop, that the car did not stop until it stopped with the rear platform at the brick walk.

The conductor testified that when the car was slowing down to stop at Knox avenue the plaintiff and another young lady who was with her arose and came out

on the rear platform where he was standing, as if intending to alight; he spoke to them and said, ''Ladies please wait until the car stops;'' then he turned to close the door of the car, as it was cold, and as he did so the plaintiff attempted to step off the car while it was moving and fell; the other young lady remained on the platform until the car stopped at the brick walk, and alighted in safety. There were two passengers on the car whose testimony corroborated that of the conductor. The other young lady mentioned was present in court during the trial, having been subpoenaed by defendant, but was not called to testify except by the plaintiff in rebuttal and she testified that she did not see one of the witnesses for defendant who had testified that he was standing on the rear platform when the young ladies came out. Defendant also introduced in evidence an ordinance of the city which required the defendant to stop its cars for the purpose of receiving or discharging passengers on the far crossing of a street.

The case was given to the jury on instructions for the plaintiff to the effect that if they should find from the evidence that in response to a signal from plaintiff the ''servants of defendant stopped said car at or near the east cross walk of said Knox avenue where the same intersects defendant's said railway tracks on Manchester avenue, for the purpose of allowing plaintiff to alight therefrom,'' and that while it was so stopped and plaintiff was in the act of alighting, using ordinary care, the defendant's servants in charge of the car caused it to be put in motion and she was in consequence of the motion thrown to the ground and injured, the verdict should be for the plaintiff.

For defendant the jury were instructed in effect that the defendant was not an insurer of the safety of the passenger and that negligence was not to be presumed from the mere happening of the accident; that if the car did not stop until it reached the west side

of Knox avenue and if the plaintiff fell while attempting to alight from the car near the east side of Knox avenue while it was yet in motion, the verdict should be for defendant; that by the ordinance read in evidence defendant was required to stop its car in this instance only at the west crossing and plaintiff was presumed to know that, and even if the car did stop on the east side of the street plaintiff had no right to suppose that it had stopped to allow her to alight or that it would remain standing for that purpose; that if she attempted to alight under those circumstances when a person of ordinary prudence would not have done so she was guilty of contributory negligence and could not recover; that by the ordinance the defendant had no right to stop its car on the east side of the street to allow plaintiff or other passengers to alight, and the plaintiff was presumed to know that fact, and if she attempted to alight before the car stopped at the west crossing she could not recover; that it was the duty of passengers to inform themselves of the reasonable and necessary methods observed in operating street cars, and if in obedience to a signal to stop at Knox avenue the motorman had reduced the speed of his car aiming to stop at the west crossing and was moving at a slow rate, the plaintiff had no right then to attempt to alight, and the verdict should be for the defendant unless the car came to a full stop and was started again while the plaintiff was in the act of alighting with the actual knowledge of the conductor; and that by force of the ordinance, even if the car had come to a full stop at or near the east crossing and the plaintiff attempted to alight there, she was not entitled to recover unless the conductor actually saw her in the act of alighting and permitted the car to be started while seeing her in that act.

The court refused a peremptory instruction to find for the defendant and also refused this instruction:

"C. The court instructs the jury that the only allegation and complaint which the plaintiff makes

against defendant is that the car was stopped at or near the east cross-walk of said Knox avenue, and that while said car was so stopped and while she was attempting to alight therefrom at said point, the car was negligently put in motion and that thereby she was thrown down and injured. The court further instructs the jury that they must not consider any other question of negligence so far as the defendant's negligence is concerned and that the burden is upon plaintiff to prove to your satisfaction by a preponderance of the evidence the truth of the aforesaid allegation and complaint, and if she has not done so your verdict must be for the defendant, the St. Louis & Meramec River Railroad Company.''

As above stated, the judgment was for the plaintiff for $2,500, and the defendant appeals.

I.   The main insistence of appellant is that there was no substantial evidence to sustain the plaintiff's case and the court erred in refusing the peremptory instruction, and for the same reason the court erred after verdict in overruling the motion for a new trial.

The point in dispute on which the case turned is, had the car stopped when the plaintiff attempted to alight? On this point the testimony for the plaintiff was flatly contradicted by that for the defendant. She said: ''When it came to a perfect standstill I walked to the steps, and had my foot just in the act of stepping down when it jerked and threw me from the car, and I knew nothing that happened after that, for I was perfectly unconscious.'' That is very direct and unequivocal testimony and she was in a position to know what she was talking about. The testimony of the two boys is subject to a doubt as to whether they were not giving the result of information they had acquired rather than of what they had seen. They both testified that at that time they were looking west and did not turn to look at the car until their attention was called

to the accident. It seems, therefore, that the accident had occurred before they saw the car. One said he knew that the car had stopped because he noticed the rattling of the brakes. Without imputing to them an intention to testify falsely, the character of their evidence is such that the trier of fact would have been justified in believing that they had jumped at the conclusion and had stated rather what they believed than what they knew.

Next to the plaintiff herself the motorman was probably in a better position to know what he was talking about than either of the other witnesses. He told a very straightforward and consistent story. There was some room for the conductor to have been mistaken, for his attention was necessarily divided between observing the movements of the young ladies and his duties to his other passengers, and so also the two passengers who testified might have been mistaken. But there seems to be no room for either the plaintiff or the motorman to have been mistaken, and the jury had to choose between them which to believe.

In that condition of the evidence the trial court could not have refused to submit the question of fact to the jury. When the verdict came in if the court had considered it contrary to the weight of the evidence it would have been its duty to have sustained the motion for a new trial. But when the jury have weighed the evidence and decided which witness is most worthy of credit, and when the trial court has set its approval on the verdict, there is little room for the action of an appellate court on a question of fact. It is only when we are convinced that the verdict is the result, not of judgment, but of prejudice or passion, that we are justified in setting at naught the action of the jury and trial court. Whatever may be our views as to the fair preponderance of the evidence in this case we do not feel justified in saying that the verdict is the result of prejudice or passion.

The court did not err in refusing the peremptory instruction to find for the defendant.

II.   Complaint is made of the following question which the physician who attended the plaintiff and under whose care she had been since the accident, was allowed to· answer, over the objection of defendant: "In view of what you had seen when you first visited her, and in view of the fact that you continued to treat her and that she has remained under your care to the present day and in view of the fact that she now claims she is still suffering from pains in her head, I will ask you in your opinion as a physician would those pains that she claims to suffer, be caused or be likely to be caused by the injury to her head for which you treated her on the 8th of last December?"   To which question an affirmative answer was given.

The objection was "that the proper foundation has not been laid, and not predicated on facts which the evidence tends to establish, and is based on what plaintiff claims and on what the witness saw whether testified to or not, and because it is incompetent, the question being as to what is probable."

We do not perceive in the objection as made any specific reason for excluding the question.   Whilst the question itself is a little rambling, yet its fair purpose is to obtain from the physician his opinion, based on his own knowledge of the case, as to whether the subjective symptoms of pains in the head from which the plaintiff testified she was still suffering were probably caused by the injury she received in this accident.   There was no error in the court's ruling on that question.

III.   The point is made that in the instruction given for the plaintiff this language is used: "and if you further find from the evidence that said servants of defendant stopped said car at or near the east crosswalk of Knox avenue  .  .  .  for the purpose of allowing plaintiff to alight," etc., whereas, it is claimed,

there was no evidence that the car was stopped there *for that purpose.*

The idea advanced is that even if the car stopped at the east crossing or near it, it did not do so for the purpose of allowing the plaintiff to alight.

There was evidence tending to show that at this crossing the defendant did not always observe the requirements of the ordinance in reference to the precise point of stopping, there being really but little showing of a street there and frequently the car stopped before it reached the far crossing to receive or discharge passengers.

Therefore, if as defendant contends the plaintiff is chargeable with knowledge of the ordinance and knew that the defendant was required to stop on the far crossing, still the evidence tends to show that she knew that the defendant did not always do so and she was justified from her knowledge of defendant's custom in this respect in thinking when the car stopped that it did so to let her get off. Defendant offers no suggestion of any other purpose for which the car stopped, if it did stop, before reaching the far crossing.

The plaintiff had signaled for the car to stop to let her off at Knox avenue; if it stopped where she said it did, she had a right under the circumstance to suppose that it stopped to let her get off and it was not error in the court in submitting the question of the purpose of the stop to the jury.

IV.    As to instruction "C" refused, we see no ground for complaint. That instruction declares that the only act of negligence charged against defendant is in starting the car after it had stopped and while the plaintiff was in the act of alighting and directs the jury to find for the defendant unless that fact is proven by a preponderance of the evidence. That instruction was in effect but a repetition of the other instructions given both for the plaintiff and the defendant.

As this is the defendant's appeal we are not called upon to pass judgment on the correctness of the instructions given in its behalf and therefore we will only say of them that they were at least as favorable to the defendant as it had any right to ask.

.V.   Complaint is made of remarks of the counsel for plaintiff in his argument to the jury.

The young lady who was in company with the plaintiff on this occasion was in court during the trial, having been subpoenaed by defendant.   But neither party called her to the stand until after the defendant had closed and then the plaintiff called her and questioned her on one point only in rebuttal.

In his argument to the jury the attorney for the plaintiff stated that as this young lady had been subpoenaed by the defendant he had a right to suppose that defendant would put her on the stand as a witness and therefore he did not call her in chief but that defendant had closed his case without calling her and had thus played a trick on him; that he would have called her if he had not supposed the defendant intended to do so; that in rebuttal she had testified that the man who testified for defendant and who said that he was on the rear platform with the conductor, was not there, and what she said was the truth and that that man was a perjurer and a villian in his heart.

A misstatement by an attorney in his argument to the jury of a material fact is ground for reversal of a judgment in his favor; but when the remarks complained of do not amount to a misstatement of a material fact, but rather the venting of offensive epithets, it is not ordinarily a ground for reversal, but should be corrected by the trial court as a breach of decorum and an offense against the dignity of the court.   The court in defense of its own dignity and authority, as well as in obedience to its duty, ought to protect witnesses who are in its attendance from unjust and op-

probrious remarks calculated to provoke a breach of the peace. There is nothing in this record that justifies the remarks of counsel that he was the victim of a trick or that the witness referred to was a perjurer and a villian, and the remarks were improper, but we do not think they justify the reversal of the judgment.

We discover no reversible error in the record. The judgment is affirmed.

All concur, except *Marshall, J.,* not sitting.