ANNA VEISS, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals.    Argued and Submitted May 4, 1914.
Opinion Filed June 2, 1914.

1. STREET RAILWAYS: Injury by Being Dragged: Failure to Stop Car: Prerequisites to Recovery. A person dragged by a street car cannot recover for injuries sustained by reason of the negligence of the operatives of the car in not stopping it as soon as possible after learning of her peril, where there is no evidence to show which of her injuries were occasioned by the dragging for the distance in which it was not possible to have stopped the car, in the exercise of due care, and which were caused by the dragging beyond that distance.

2. EVIDENCE: Opinion of Physician: Invading Province of Jury. In an action for injuries received by one who was dragged by a street car, where there was no controversy concerning the fact that she had been dragged and seriously injured, testimony by her physician that a subsequent miscarriage resulted from the accident was admissible as an opinion of the witness as to one of the effects of the accident, and was not vulnerable to the objection that it invaded the province of the jury.

Appeal from St. Louis City Circuit Court.—*Hon.
Eugene McQuillin,* Judge.

REVERSED AND REMANDED.

*Boyle & Priest* and *Paul U. Farley* for appellant.

(1) The court erred in giving to the jury plaintiff's instruction number 3. Graefe v. Transit Co., 224 Mo. 232. (2) The court erred in permitting Dr. Kohromel to testify, over defendant's objections, that a miscarriage suffered by plaintiff was one of the results of the accident. Castanie v. United Railways Company, 249 Mo. 192.

*John J. O'Connor* for respondent.

(1) When two or more proximate causes contribute to produce an injury, and each is sufficient within itself to support an action for the recovery of the entire damages, the plaintiff, pleading all of such acts of negligence, is entitled to recover on the proof of one of them. Dutro v. Metropolitan St. Ry. Co., 111 Mo. App. 258. A charge of negligence that the car was started too soon, and another charge that defendant failed to stop the car after seeing or knowing that the plaintiff was being dragged, in as short a space as could be done by ordinary care, are not inconsistent, and a recovery may be had on proof of either or both, and an instruction based on either may be given. Shanahan v. St. Louis Transit Co., 109 Mo. App. 232. (2) Where there is a sharp conflict between the parties as to whether or not the accident, out of which the plaintiff claims to have received his injuries, ever occurred, then it is improper to ask a doctor while he is testifying whether or not the accident caused the injury, for if he answered yes, the answer established the happening of the accident as well as the cause of the injury. But where the accident is admitted and it is not denied, as in this case, that the injuries were received in the accident and the only dispute is as to the extent of the injury, it is proper to let the physician give his opinion, as was done in this case. Franklin v. Railroad, 188 Mo. 545.

REYNOLDS, P. J.—Action by plaintiff for damages sustained by being caught in a wire loop attached to a street car and afterwards being dragged some distance thereby.

There are two separate acts of negligence charged in the petition. One in negligently permitting the wire to hang from the rear end of the car and drag upon the ground, and the other for negligently per-

mitting the car to continue to run, dragging the plaintiff, after those in charge of the car had actual knowledge of her perilous position.

The answer was a general denial, with the averment that whatever injuries, if any, plaintiff sustained, were caused by her own carelessness and negligence.

Plaintiff, on November 25, 1910, boarded a northbound car on Broadway at Washington avenue, in the city of St. Louis. When the car reached Angelica street, it was stopped to allow passengers to alight. Plaintiff alighted from the east side of the car and started to cross the street in the rear of the car, intending to go to the west side of Broadway. When she was at about the middle of the rear end of the car, it was put in motion. Plaintiff at once discovered that she had stepped into a loop of wire, which was attached to the rear bumper or coupler of the car, with her left foot, so that the loop caught her around the ankle of that foot and, the car continuing in motion, she was dragged on the ground a considerable distance, the distance of the dragging being in sharp dispute; some witnesses for plaintiff putting it as far as 140 feet; those for defendant placing it at from twenty-five to forty feet, plaintiff herself giving it at 100 feet. The instant she discovered that her ankle or foot was caught in this looped piece of wire and felt herself dragged on the ground, and, as she testified, before the car had gone any distance, she cried out in a very loud voice to those in charge of the car, to stop the car, that she was being dragged. At that same instant, according to the testimony, a man on the car told the conductor that the car was dragging a woman. Bystanders, as well as passengers on the car, seeing plaintiff's peril, also shouted and called out that a woman was being dragged. According to the testimony of the conductor, when he was told by a passenger that some one was being dragged, he at once gave the motorman the signal to stop, the car stopping after

having gone not to exceed twenty or twenty-five feet. To the contrary, a number of witnesses for plaintiff testified that the car did not stop after the alarm had been given, until it had dragged her 100 or 120 feet further. Plaintiff testified that she had remained conscious, that she kept her senses, until she was dragged eighty feet; that when she had been dragged about that distance she lost consciousness.

There was testimony to the effect that the employees of defendant in charge of the car had made no examination of the rear of the car from the time it was taken out of the shed to go upon its run until the occurrence of the accident, the testimony being to the effect that this wire, including the loop, was something over four feet long, extended about that length from the rear of the car, and that the loop, something over a foot long, trailed behind the car on the ground and in such a position that any one looking at the rear of the car could easily have discovered its presence.

A witness for plaintiff, who was a passenger on the car, testified that she boarded the car at 2600 South Broadway, a distance of about four miles from the place where the accident occurred to plaintiff, and that she (the witness), in boarding the car, saw this piece of wire projecting beyond the rear of the car and dragging on the ground.

This particular car had run about eight miles from the time it left the shed until the accident occurred to plaintiff. There is no evidence in the case as to how the wire became attached to the car coupling.

The evidence in the case, without contradiction or contest, showed that the injuries sustained by plaintiff were of a very serious character. When plaintiff was lifted from the ground she was escorted into a drugstore in the immediate vicinity, kept by a Dr. Kohromel, who was also a practicing physician. He testi-

fied that between six and seven o'clock on the evening of the day of the accident, plaintiff was brought into the store by a police officer and some other gentleman. She seemed to be almost out of her mind, suffering from shock, was "awful excited," and after making an examination the doctor advised that she be taken home. That was done and about twenty minutes later the doctor visited her at her home and examined her, taking charge of the case as her physician. Describing the injuries to her person, and that she was suffering great pain, and that swelling set in in the ankle and in the muscles of her hip and back and side, she being taken with a severe hemorrhage a few days afterwards, he discovered, about December 4th, that she had sustained a miscarriage between November 23rd and that date. This physician did not see the accident. While being examined as a witness for plaintiff, he was asked this question by her counsel, referring to plaintiff: "Now, assuming that she was a healthy and strong woman, and able to work, and working every day, and assuming that she had been, as you say, something like a month or a month and a half—in the second month, pregnant, what would you say with reference to what caused that premature birth? Would you say that that was one of the physical results of the accident, and caused by the shock and injury for which you treated her on the 25th day of November?" This was objected to by counsel for defendant, "on the ground that it is asking this witness to invade the province of the jury; asking him to determine the question that is for the determination of the jury." Objection being overruled, defendant duly excepting, the witness (the doctor) answered, "Yes. sir."

The trial was before the court and a jury and at the conclusion of the evidence, which developed the facts as above stated, the court, after refusing an instruction asked by defendant that plaintiff could not

recover, gave three instructions at the instance of plaintiff and three of its own motion. As to these latter, while no error is here assigned to them, it is well to say that in the first of them the court told the jury that it is admitted that the car mentioned in the evidence was owned and operated at the time in question by defendant; that the wire mentioned in the evidence was attached to the rear of the car; that plaintiff was a passenger on the car; that she alighted therefrom and started to cross the track on which the car was running at the rear end thereof, when the wire attached thereto caught her and dragged her behind the car.

Of the three instructions given at the instance of plaintiff, the first, numbered 2, was on the assignment of negligence in permitting the wire to hang from the car and drag along the ground in the rear of the car, telling the jury that defendant was liable for the accident if the employees of defendant knew or might have known of its presence; another, numbered 5, was as to the measure of damages. No error is here assigned to either of these.

The only instruction given at the instance of plaintiff upon which error is assigned is that numbered 3. This, in substance, told the jury that although they might believe from the evidence that defendant had no knowledge of the existence of the wire in question, and that by the exercise of ordinary care it could not have known that the wire was attached to the rear end of the car until plaintiff's injury had occurred, nevertheless, if the jury found from the evidence that a piece of wire was in fact attached to the rear end of the car, and extended three or more feet from the car, and that when the car was in motion the wire dragged on the ground and was dangerous to persons walking near and in the rear of the car, and that plaintiff was a passenger on the car; that it was stopped to let off passengers and while so stopped plaintiff alighted from

the car and walked in the rear of the car, intending to go to the west side of Broadway, and that while she was in the act of walking in the rear of the car her left foot came in contact with the wire and the car being put in motion, the wire became fastened to her left ankle and she was knocked down and dragged by the car and wire a distance of 100 feet or more, thereby causing her to sustain the injuries to her person complained of, and if the jury found from the evidence that at the instant she found her ankle caught by the wire and before she was carried more than a foot or two, she cried out in a loud voice to defendant's servants in charge of the car to stop the car that she was being dragged, and that at the same instant other persons both upon the car and upon the street made a great outcry and repeatedly requested the conductor to stop the car, telling him that a woman was being dragged by the car; and that if the jury found from the evidence, that these employees of defendant knew or by the exercise of ordinary care could have known from the outcry of both plaintiff and others upon the car and upon the street, that plaintiff was being dragged and in danger, *and if these employees acted with ordinary prudence after they learned, or by the exercise of ordinary care, could have learned of her danger, or could by the exercise of ordinary care, and with safety to themselves and to passengers remaining in the car, have stopped the car and thereby avoided plaintiff's injuries, negligently failed to do so, and that such failure was the cause of plaintiff's injuries,* and that if the jury further found from the evidence that at the time of receiving her injuries, plaintiff was exercising ordinary care for her own safety, their verdict should be for plaintiff.   (Italics ours.)

The jury returned a verdict in favor of plaintiff in the sum of $5018.  Judgment followed, from which, interposing its motion to set it aside and for a new

trial and saving exception to the overruling of this motion, defendant duly perfected its appeal.

The learned counsel for appellant made two points upon which they rely for a reversal of this judgment: First, that the court erred in giving the third instruction above recited; second, that it erred in permitting Dr. Kohromel to testify, over defendant's objection, that the miscarriage suffered by plaintiff was one of the results of the accident.

The authority relied upon in support of the first assignment is Graefe v. Transit Co., 224 Mo. 232, 123 S. W. 835.

It is argued that upon the theory upon which the case was submitted by this instruction, defendant was not liable for injuries received by plaintiff by being thrown to the ground and by being dragged a distance which was unavoidable, by reason of the fact that the motorman was unable to stop the car within a shorter distance, but was liable for injuries received as a result of being dragged by the car through the negligence of the motorman in unnecessarily running the car beyond the distance in which the car should have been stopped by the exercise of reasonable care. It is further argued that as there was testimony that the car could have been stopped within twenty or twenty-five feet, and plaintiff testified that she was carried by dragging about 100 feet, the jury, under this evidence, could not determine, except by mere guess or conjecture, when plaintiff received her injuries; whether by being thrown to the ground and in the distance reasonably required to stop the car by the exercise of ordinary care, or whether such injuries were received after the negligence of defendant arose by permitting the car to run beyond such reasonable distance. The injuries to plaintiff, it is argued by counsel, may have occurred within the distance in which the car could not have been stopped by the exercise of ordinary care, or her injuries and additional injuries might

have occurred beyond such distance through the negligence of the motorman, hence counsel say it follows, by applying the well settled rule that "if the injury may have resulted from one or two causes for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and if the evidence leaves it to conjecture, the plaintiff must fail in his action," citing and quoting the above from Warner v. St. Louis & Meramec River R. R. Co., 178 Mo. 125, l. c. 134, 75 S. W. 67.

That proposition, as stated in the Warner case as above, is not open to argument.

The jury are told, in effect, by the words in this third instruction which we have italicized that defendant is not liable for damages for injuries sustained before the car could or should have been stopped, if the jury found that those in charge of the car "acted with ordinary prudence after they learned, or by the exercise of ordinary care, could have learned of her danger, they could by the exercise of ordinary care and with safety to themselves and to passengers remaining on the car have stopped the car and thereby avoided plaintiff's injuries, but negligently failed to do so, and that such failure was the cause of plaintiff's injuries." The complaint rests on the idea that this instruction is not specifically definite in confining the recovery to injuries received after the car could have been and was not stopped.

By plaintiff's first instruction (No. 2) the jury were properly directed that if the wire was negligently suffered to hang from the car, and plaintiff was injured by being caught and dragged, she could recover. This followed the first assignment of negligence. But this third, based on the second assignment, in so many words, exculpated defendant from liability for injuries received before the car could have been stopped. As there was no evidence on which the jury could deter-

mine what injuries had been received after the car could and should have been stopped, this instruction should not have been given and giving it is reversible error. Plaintiff's learned counsel has himself injected this element into the case—and being present, it must be met by proof, and an instruction on it must rest on proof of the extent of injuries received after the car could have been stopped. If there had been any substantial evidence on which the jury could measure the damages for injuries received after that time, this third instruction could be sustained. But there is no such evidence.

The second assignment of error is in permitting the physician to testify that the miscarriage suffered by plaintiff was caused by the accident. Castanie v. United Railways Co., 249 Mo. 192, 155 S. W. 38, is cited for this. We do not think it helps respondent under the facts here present. It is distinctly said by Judge BOND, who wrote the opinion in that case, that it is to be borne in mind, in passing upon the question to and answer of the physician in that case, "that the defendant denied that plaintiff had been injured or thrown from one of its cars, and sought to sustain that denial by its conductor and motorman, who testified that no such accident had happened. The issue thus raised by defendant was one which it was entitled to have determined by the jury and not by the expert called on behalf of plaintiff." Therefore it was held in the Castanie case, that the question asked of the physician and answered by him was an improper question. In support of this opinion Judge BOND cites and quotes from Glasgow v. Metropolitan St. Ry. Co., 191 Mo. 347, 89 S. W. 915. The Glasgow case was also one in which the fact of the accident was vigorously contested.

In Franklin v. St. Louis & Meramec River R. R. Co., 188 Mo. 533, l. c. 543, 87 S. W. 930, a question

very nearly parallel to that here asked was held not to be improper.

In the very late case of Taylor v. Metropolitan St. Ry. Co., not yet officially reported, but see 165 S. W. 327, considering and reviewing the authorities in our State, it is held by our Supreme Court that under the facts in the case the questions to and answer of the physician should not be considered reversible error. These remarks of Judge LAMM in Bragg v. Metropolitan St. Ry. Co., 192 Mo. 331, l. c. 344, 91 S. W. 527, are there quoted approvingly and as applicable: "Furthermore, in our opinion, if the objection was broad enough to include such contention and levelled directly thereat, yet the question propounded to Dr. Snell is not obnoxious to such criticism in a case like this, where the whole case proceeded on both sides on the theory that the accident happened and that respondent was injured, and where, as here, the controlling defense is directed to the nonliability of appellant for that accident and that injury."

Our court, in Jerome v. United Railways Co., 155 Mo. App. 202, 134 S. W. 107, held a question to the physician asking him to state whether or not the swelling he noticed "was caused by trauma, that is to say, violence," was held not to be an improper question. There we said (l. c. 208): "The case of Glasgow v. Metropolitan St. R. Co., 191 Mo. 347, 358 et seq., 89 S. W. 915, relied upon by defendant, is not precisely in point, and we believe the rule of that case should not be extended. In the case referred to, the injury involved occurred as a result of an alleged fall from a street car. The fact that plaintiff fell from the car at all, however, was denied and therefore was an issue throughout the case." It was for that reason and under such facts that the Glasgow case was decided. Continuing, Judge NORTONI, speaking for our court, said (l. c. 209): "That what caused an injury is a question for the jury, generally speaking, is undoubted,

and it is certain in a case where the fact that plaintiff was injured at all through the fault of defendant is wholly denied, such opinion evidence as that above discussed should be condemned.''

It would seem to us to stretch the rule to its limit to exclude this opinion of this physician, who had attended the patient. In the case at bar there was no question whatever but that this plaintiff was caught in this wire, dragged some distance and seriously injured. There was no pretense that she had been in any other accident or sustained any other shock or fall from which miscarriage could possibly have resulted. That she received her injuries solely from the dragging was in no manner contested. The physician here, answering the question put to him, instead of substituting his opinion for that of the jury, did no more than tell this jury, composed of men competent to sit on a jury, what they themselves knew, when knowing the facts of the accident itself, were told that a miscarriage had occurred. The only part of the question which can possibly be held objectionable is the concluding sentence, namely: ''Would you say that that was one of the physical results of the accident, and caused by the shock and injury for which you treated her on the 25th day of November?'' That answered, was nothing more than the opinion of the witness as to one of the effects of the accident. We decline to hold the allowance of the question and answer reversible error.

These are the only errors assigned by the learned counsel for appellant. We are compelled to reverse the judgment for error in the third instruction.

The judgment of the circuit court is accordingly reversed and the cause remanded. *Nortoni* and *Allen, JJ.,* concur.