# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

### OCTOBER TERM, 1872, AT ST. LOUIS,

[CONTINUED FROM VOL. L.]

———————◆—◆———————

W. C. R. WIGGINS, Respondent, *v.* MADISON GRAHAM, Appellant.

1. *Agency — Share of profits, suit for by clerk — Evidence — Books of concern — Rule of damages, same as that of partnership.*— In an action by a clerk against his employer, on an agreement whereby the former was to receive as compensation a certain portion of the net profits of the business, where it appeared that plaintiff kept the books and managed the business, the books would be proper but *not conclusive* evidence on either side. Defendant might show that plaintiff had introduced false or fraudulent entries into the books of the concern.

The rule for ascertaining damages in such cases is precisely the same as that which applies to partnership accounts.

*Appeal from Jefferson Circuit Court.*

*Greene* and *Williams,* for appellant.

*J. L. Thomas & Bros.,* for respondent.

ADAMS, Judge, delivered the opinion of the court.

The defendant was a merchant, and employed the plaintiff as clerk to take charge of and manage his business for one year ending March, 1871, for which he agreed to pay him one-third

2—VOL. LI.

Wiggins v. Graham.

of the net profits. This action was brought on this agreement, and the petition alleges that the net profits of the business amounted to $1,998.28, of which the plaintiff claimed one-third as the amount due him under the agreement. The agreement is admitted by the answer, but the defendant denies that there were any net profits. Whether there were any net profits or not was the issue presented by the pleadings and tried in the Circuit Court. The case was submitted to a jury and resulted in a verdict for the plaintiff. On the trial the plaintiff was introduced as a witness, and produced abstracts from the books of the defendant, which books he himself had kept. These abstracts were read to the jury as evidence. The first abstract was a memorandum of the amount of goods on hand, the amount of accounts and debts due to and by defendant, and showing the balance as the stock on hand when the plaintiff entered into his service. The second abstract was the same kind of account taken at the time the plaintiff left the defendant's service at the end of the year, and, deducting the first from the last, left the balance of $1,909.28, which the plaintiff claimed was the net profits; and this was substantially the evidence upon which plaintiff relied for a verdict, and a verdict was found for him on this basis. The defendant, on his part, gave evidence conducing to prove that the plaintiff had, during his employment, the custody of the books from which these abstracts were taken, and made all the entries thereon; and he offered to prove that the plaintiff had made false and fraudulent entries on them so as to show larger profits than really existed. But the court excluded this evidence on the alleged ground that no foundation had been laid in the answer by averments to that effect to warrant its admission, and the defendant excepted. After the evidence was closed, the court, at the instance of the plaintiff, gave this instruction to the jury:

"The court instructs the jury that the rule by which the net profits of any business for a given year are ascertained, is to ascertain the amount of stock, including the goods, wares and merchandise, or property and debts due to the business on notes and accounts, at the beginning of the year, from which the debts due by the business on notes and accounts should be deducted,

the balance showing the net stock at the beginning of the year; and then to ascertain in the same way the net stock on hand at the end of the year, the difference between the net stock at the beginning of the year and the net stock at the end of the year being the net profits; and if the jury believe from the evidence that defendant employed plaintiff to act as his clerk in his business as a merchant near Morse's Mill, in Jefferson county, Mo., for the year ending March 25, 1871, and agreed to pay him one-third of the net profits of the business for that time for his services as such clerk, and that plaintiff acted as clerk of the defendant in said business according to his agreement, then the jury will allow plaintiff one-third of the net profits, if any, of said business for that year, to be ascertained by them by the above rule, and may allow interest at the rate of six per cent. per annum on any sum they may find to be due to the plaintiff, to be computed from the time of bringing this suit."

The court refused to instruct the jury that unpaid accounts and notes ought not to be taken into consideration in estimating the amount of net profits.

The exclusion of the evidence offered by defendant, and the action of the court on the instruction above referred to, raise all the points necessary for us to decide in this case. The only issue made by the pleadings was whether there were any net profits, and the amount thereof. The plaintiff alleged that there were net profits growing out of the business during his employment, to such an amount. The defendant denied this allegation. It was not necessary, and, indeed, it would have been improper, for either party to have set forth in his pleading the evidence by which he expected to prove his case. The defendant's books, as kept by the plaintiff, were proper evidence on either side; they were not, however, under the circumstances, conclusive on the plaintiff or defendant. As the books had been kept by the plaintiff, and as he had the management of the business, the defendant had the right to prove that false and fraudulent entries had been made on the books by the plaintiff showing profits that did not really exist. After the plaintiff had used abstracts from the books to prove the amount of profits, it was certainly legitimate for the

defendant to show that false and fraudulent entries had been made by the plaintiff on the books from which these abstracts had been taken, and that by such entries the profits had been apparently increased.

The relation of these parties to each other is settled by the pleadings; they were not partners *inter sese,* nor as to third persons. The plaintiff was to be paid for his agency one-third of the profits. He did not thereby become a part owner either in the goods or the profits. He was simply a clerk for the defendant, having no interest in the stock, nor in the profits as profits. If the defendant refused to pay him his wages he became liable to the plaintiff for damages for a breach of the contract tantamount to one-third of the net profits. The action was not for a settlement of the partnership, but for damages for a violation of the contract of hire. But the rule for ascertaining the damages for a violation of the contract of hire is precisely the same in this sort of case as if it had been a settlement between partners. The rule as laid down by the court was correct, upon the evidence as it stood before the court. If, however, there had been evidence proving that the goods had, from any cause, deteriorated in value, or had increased in value, or that the debts due the store had become of less value, that the debtors were insolvent, etc., it would have been necessary that these considerations should have been entertained in order to reach a correct estimate of the net profits. In short, the same considerations are involved in this case as in the settlement of a partnership. If the issue required the examination of long accounts, it would be in the discretion of the court to refer the trial to a referee instead of a jury. (See Wagn. Stat. 1041, § 18.) That might be the best course in this case; but, as before stated, it rests in the discretion of the court whether to refer it or not.

In estimating the net profits, it was absolutely necessary to take into consideration the unpaid debts and accounts, and deduct the worthless from the good. The plaintiff was not bound to wait till the debts due the store should be collected. He was not the owner of the debts, and had no interest whatever in them. The defendant might let them run as long as he pleased; but he

became liable to pay the plaintiff his hire as soon as the time expired, to be estimated at one-third of the net profits.

Under the view we take of the case, the judgment must be reversed and the cause remanded. Judge Wagner concurs. Judge Bliss absent.