# CHARLESTON.

### JAMES P. FLANAGAN v. FLANAGAN COAL CO.

### Submitted March 8, 1916.    Decided March 14, 1916.

1. PRINCIPAL AND AGENT—*Advancements by Agent—Items of Account—Contract.*

    In the absence of an express agreement with his principal to the contrary, an agent's advancements of money for his principal's benefit, in the accomplishment of the purposes of the agency, are items, factors or elements in the account between them, not loans or debts by express contract. (p. 781).

2. EVIDENCE—*Books of Account—Settlement of Agency Account.*

    All entries made in books of account or memoranda, respecting such advancements by the agent, are a part of his work as agent, and he cannot withhold such books and papers from the principal as being his individual property. Whatever their status as property may be, both parties are entitled to their use in the settlement of the agency account. (p. 781).

3. CONTINUANCE—*Grounds—Refusal to Produce Evidence.*

    In an action for a balance alleged to be due from the principal on such an account, it is error to refuse a continuance, when the agent's refusal to produce such books and diligent effort of the principal to obtain them, have been shown as ground therefor. (p. 781).

Error to Circuit Court, McDowell County.

Action by James P. Flanagan against the Flanagan Coal Company.    Judgment for plaintiff, and defendant brings error.

*Reversed and remanded for new trial.*

*Strother, Taylor & Taylor* and *Harold A. Ritz,* for plaintiff in error.

*E. C. Marshall* and *Sanders, Crockett & Kee,* for defendant in error.

POFFENBARGER, JUDGE:

This writ of error is to a judgment against a corporation in favor of one of its directors, a former president thereof, for money he claims to have advanced or loaned to it, directly and indirectly, while he was its president and general manager. A short time before his retirement from the management of the company, he, as president, executed in the name of the company, a note to himself for the amount he claims, $2,568.90. His declaration contains common counts for said sum and a special count on the note. Defense was made under pleas of *non est factum* as to the note and *non assumpsit.*

On the ground of alleged surprise and inability fully to make the defense it claims to have, occasioned by failure and refusal of the plaintiff to deliver up to it, or produce for use in the trial, books and papers relating to his transactions with the corporation and material and relevant to the issue raised, the defendant moved for a continuance and excepted to the action of the court in overruling the motion. If this exception is well taken, it will be unnecessary to consider other assignments of error, for the evidence on a new trial may be radically different from that found in the present record.

The corporation was chartered and organized in 1908, for the purpose of taking over and operating a tract of coal land, of considerable size, which the plaintiff had purchased. For and in consideration of $65,000.00 of the capital stock at its par value, he conveyed the land to the company, and about $24,500.00 of additional stock was sold to other persons, among whom were a brother, Thos. J. Flanagan, a brother-in-law, John P. Crosby, John F. Butler and C. D. Rishel. These four gentlemen and the plaintiff were made directors and they elected the plaintiff, James P. Flanagan, president and general manager, Thos. F. Flanagan treasurer and John P. Crosby secretary. From the organization of the company until April 1, 1913, and possibly longer, the plaintiff had the general management and control thereof. Within that period, three mines were opened and operated to some extent, on the property, at considerable expense. How much coal was

mined and sold is not disclosed. Within this period, the promoters, incorporators and organizers lost control of the corporation. Mutations in the ownership of the stock were such that, at the stockholders' meeting held some time between March 1, and October 31, 1913, the directorate was radically altered. The plaintiff claims he was ousted from the position of manager about April 1, 1913, but he seems to have held the presidency until October, 1913. The note involved here was executed February 1, 1913. Its validity is denied on the ground of lack of authority in the president to execute it to himself, either without authority expressly conferred by the board of directors, or on its order made at a meeting thereof attended only by himself and two other members, on account of his disqualifying interest in the subject matter. In view of this attack upon the note, a bill of particulars was filed in support of some of the common counts, charging loans of money at various times which, it is said, cannot be exactly or accurately stated, and an agreement to pay the aggregate amount thereof as a stated account.

All the facts above stated do not appear in the evidence adduced on the motion for a contiuance; but that evidence proceeds upon the theory of obscurity and uncertainty as to the items of indebtedness, recognized and admitted by the bill of particulars. In that paper, the plaintiff himself declares his inability to itemize his account against the company. He may not have repeated the declaration in his testimony in oppostion to the motion, but it is significant that he neither qualified nor retracted it. He also virtually admitted a commingling of the corporate and his personal transactions. The documentary evidence of the amounts he claims to have advanced consists of entries made only in pocket memorandum books, which he regards as private and has withheld on that ground, memoranda made on numerous checks drawn on his personal bank account, showing payments to and for the company and entries in a book he made up in 1912, by transcription or reentry from the alleged private books. Nothing has been produced except the book made up in 1912 and the checks, and access to them was not permitted until the day before the trial. He admitted the book so made up and produced did not show the amount

of money he claimed to have paid for the company out of his personal funds, and said he had kept that in his private account which he did not consider the company's account. He said a copy of the book made up in 1912 from his note books had been delivered to the directors on or about January 6, 1913, but it certainly gave no information as to the state of the account between himself and the company or the items advanced.

The plea of *non est factum* was a denial of the validity of the note. In passing upon the motion for a continuance, the court was bound to take notice of the possibility of impeachment of the note and failure to sustain the allegation of an account stated, and consequent necessity of reliance upon right to recover items under the common counts for money lent and money had and received, in which event the original entries would be matters of vital importance, in view of the plaintiff's confessed inability to give the dates of the alleged advancements or loans. Another potent factor in the case, disclosed by the evidence adduced on the motion, was the confidential relation subsisting between the parties at the dates of the alleged loans, imposing upon the plaintiff duty to render an account of his transactions with the company as well as one showing its transactions with third persons effected or conducted by him, for and on its behalf. Note books not kept primarily as books of the company, but containing entries for and against the company, were at least *pro tanto* company books, in the absence of any other books of original entry kept for it, and he was bound to produce them and accord to the company such use thereof as would aid it in the effort to ascertain and vindicate or protect its rights. As an agent and trustee of the corporation, he could not contract with himself, in the technical sense of the term, as he might have done with a stranger, for the use of money or anything else. Such of his personal funds as he paid into the company's bank account or used in paying its bills, were not loaned. They were mere expenditures by him for his principal in the execution of his agency. Of course the law would raise an implied promise to pay or refund such advancements, but they could not be, strictly speaking, due by express contract between the principal acting by its agent and the agent himself, if

not made under and by virtue of a valid order of the board of directors, or ratified by them. *Rohrbaugh* v. *Express Co.*, 50 W. Va. 148. "Every agency is subject to the legal limitation that it cannot be used for the benefit of the agent himself." *Bank* v. *O. V. Furniture Co.*, 57 W. Va. 625; Clark & Skyles, Agency, Sec. 222, p. 524. Hence, all such advancements must necessarily constitute items or factors in the accounting between the principal and agent, and all the entries respecting them, in whatever books made, are important and almost indispensable evidence in an effort to settle the account and ascertain the balance, whether the settlement is a judicial one or not. Moreover, in any settlement, judicial or nonjudicial, it is manifestly fair and just that both parties have an opportunity to inspect and analyze all books of original entry, papers and documents pertaining to the items of the account or claim.

It further appears that a mandamus proceeding against the plaintiff, to compel him to turn over all books and papers of the company to its new board of directors and officers, was pending, and that he was withholding the books of original entry, on the theory of his individual ownership thereof.

We are clearly of the opinion that it was the duty of the court, in view of the possibility of necessity of a judicial settlement of the agency account, in the action, disclosed by the state of the pleadings, to sustain the motion for a continuance.

Hence, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded for new trial.*