BERTHA CHAFFIN, RESPONDENT, v. KANSAS CITY, MISSOURI, APPEL-LANT.—92 S. W. (2d) 917.

Kansas City Court of Appeals.    March 2, 1936.

*George Kingsley, City Counselor, James R. Sullivan* and *Arthur R. Wolfe* for appellant.

*Grover, Browne & Ennis* for respondent.

REYNOLDS, J.—From an adverse judgment in the sum of $5000 in favor of the plaintiff in an action against defendant for personal

injuries sustained by reasón of alleged negligence of the defendant, the defendant, after unsuccessful motions for new trial and in arrest of judgment, prosecutes this appeal.

On December 22, 1932, the plaintiff, while walking north on the sidewalk on the east side of Pennsylvania Street in Kansas City, Missouri, at a point about 100 feet south of the intersection of said street with Seventeenth Street in said city, was caused to fall and injure herself by stepping on slippery ice and snow on the pavement, which fall and injuries she contends were caused by the negligence of defendant.

The particulars on which the charge of negligence upon the part of the defendant rests fully appear from plaintiff's petition which is here set out in full, omitting captions and signatures:

"Plaintiff states that the defendant is a municipal corporation organized and existing according to law.

"Plaintiff for her cause of action states that on the 22nd day of December, 1932, while she was walking on the regular sidewalk about one hundred feet south of 17th Street at the intersection of 17th and Penn Street she was negligently caused to fall and injure herself as hereinafter mentioned by stepping upon some (rough, uneven) slick and slippery ice and snow and other substances, the exact nature of which are not known to plaintiff at this time, causing her to slip, slide, stumble and fall.

"That the negligence of defendant consisted in this, that defendant knew or should have known by the exercise of ordinary care of said (rough, uneven) slick and slippery condition as aforementioned, and that said (rough, uneven) slick and slippery condition rendered said sidewalk at said time and place not reasonably safe for plaintiff and others using it, but (a) dangerous (obstruction), in (reasonable) time thereafter to have removed said (rough, uneven) slick and slippery snow, ice and other substances and otherwise remedied said condition and rendered said sidewalk reasonably safe for plaintiff and others using it prior to December 22, 1932, and have thereby avoided injury to plaintiff, but that defendant negligently and carelessly failed to exercise ordinary care when it knew or should have known of said condition and negligently failed to remove said (rough, uneven) slick and slippery substances (and dangerous obstruction) prior to December 22, 1932, and in consequence of said defendant's negligence as aforementioned, plaintiff was caused to fall and did fall as aforementioned to the sidewalk and street at said time and place injuring herself as follows:

"That her head, neck, back, shoulders, arms, spine, hips, legs and entire body and each of the bones, muscles, nerves, vessels and ligaments thereof were bruised, contused, twisted, stiffened, swollen, wrenched, displaced and lacerated; that each of her internal organs were bruised, contused, twisted, wrenched and displaced; that she

suffered a severe and lasting shock to her nerves and nervous system; that she suffered and will continue to suffer physical pain and mental anguish therefrom; that she suffered a concussion of the brain, headaches and dizziness; (she suffered an inter-capsular fracture of the left femur); that each of her coccyx bones were bruised, contused, twisted, fractured, sprained and broken; that each of her sacroiliac joints were sprained, strained, twisted and displaced; that she lost sleep, weight, strength, color and ability to work and labor and earn her livelihood; and has become sick, sore, lame and disabled; that her left leg (and hip were) was broken above the knee and (shortened) stiffened and swollen (and the functions thereof impaired); that each of said injuries is permanent and lasting to her damage in the sum of $15,000.

"Plaintiff further alleges that notice was served upon the City as required by statute of this state, within ninety days after said occurrence, by being served upon the then acting mayor of Kansas City on the 17th day of March, 1933.

"Wherefore, plaintiff prays judgment against the defendant in the sum of $15,000 and her costs herein incurred."

The answer is a general denial, with which is coupled an affirmative plea of contributory negligence on plaintiff's part.

The reply is a general denial.

There is evidence tending to show that, during the early part of December, a heavy snow fell covering the streets of Kansas City, including the street upon which plaintiff fell, and that there was a period of stormy weather in which there was alternate thawing and freezing. Ice had formed upon the sidewalks. In places, it was rough and uneven (caused by people walking on the snow and by the snow freezing) and in other places slick, where the snow had melted and run over the sidewalk and frozen. Much of this ice and snow had melted and disappeared at the time of plaintiff's injuries; but there was evidence tending to show that some of it remained at that time upon the sidewalk upon which plaintiff was walking on Penn Street and that she stepped upon it and fell. There is no question raised, upon this appeal, but what the defendant had knowledge of such condition and had a reasonable time after knowledge within which to have remedied such condition before plaintiff was injured.

There is evidence in the record tending to show the nature and character and extent of the injuries received by plaintiff sufficiently supporting the allegations of her petition in such regard. There is no question raised, upon this appeal, as to the excessiveness of the verdict; and it is therefore unnecessary at this point to cover more fully the evidence as to such injuries.

Upon a trial of the cause before a jury, the defendant, at the close of plaintiff's case and again at the close of the whole evidence,

requested instructions in the nature of demurrers, which were by the court denied. The cause being submitted to the jury, a verdict was returned for the plaintiff in the sum of $5,000, upon which verdict the judgment hereinbefore noted as appealed from was entered.

## OPINION.

The first point made by defendant on this appeal relates to the refusal of the trial court to give its requested instructions in the nature of demurrers to the evidence.

1. The defendant contends that there was not sufficient competent evidence adduced on the trial in plaintiff's behalf to show that she was caused to fall by stepping on ice and snow at the time and the place that she fell and that it was error on the part of the trial court to refuse such instructions.

It contends that plaintiff's testimony and that of other witnesses in her behalf fail to show that there was any ice on the pavement where she stepped and fell and that it is a mere conjecture under the evidence to say that there was or that she was caused to fall by slipping on ice and snow at such place.

It is true that plaintiff did testify that she did not see the ice until after she fell and that she first became aware of the ice by feeling it after she was down. However, from her testimony, it is clear that the ice was there and that she stepped upon it and, it being slick, she slipped and fell.

Upon direct examination, she was asked certain questions, to which she made answer, as follows:

"Q. Mrs. Chaffin, please just tell the court and jury what happened to you as you walked along there? A. Well, I slipped on the ice and fell and broke my limb. . . .

"Q. Where was this ice where you slipped on it? A. It was on the east side of Penn.

"Q. You told me that. Where, with reference to this driveway of this house that is in plaintiff's Exhibits 2, 3, and 4? A. It was just off that driveway.

"Q. Which way off? A. It was north. . . .

"Q. Well, Mrs. Chaffin, did you see this place where you fell? As you fell could you tell it was ice? A. No, sir.

"Q. Why, Mrs. Chaffin? What was it that prevented you from seeing that? A. Well, it was the color of the sidewalk.

"Q. When did you see it as ice at first? A. Well, I felt it when I was down.

"Q. When you were lying down? A. When I was down.

"Q. Did you go clear down? A. Yes, sir."

Again, in cross-examination, plaintiff was asked certain questions to which she made answers, as follows:

"Q. At the time that you had your fall, it was raining, that is true, isn't it? A. Yes, sir.

"Q. And your accident happened about 3:30 in the afternoon? A. Yes, sir.

"Q. And you could see for quite some distance? A. Yes, sir.

"Q. And you say there was some ice on the sidewalk over there? A. Yes, sir.

"Q. Did you see the ice before you stepped onto it? A. No, sir.

"Q. Was the ice that you observed there—was it after you fell? A. I didn't see it until after I fell.

"Q. You were walking down what part of the sidewalk? A. On the east side of Pennsylvania. . . .

"Q. Were you walking an ordinary gait at the time? A. Yes, sir.

"Q. Or were you running to get out of the rain? A. Just an ordinary walk.

"Q. Just an ordinary walk, and where were you looking immediately before you stepped on to the ice? A. I was just watching my step.

"Q. And you mean to tell the jury that it being broad daylight and nothing to obstruct your view there, and you could see for some distance, that you couldn't see that ice? A. No, sir, I didn't see it.

"Q. Did you fall right after you got on to it? A. I just slipped right when I stepped on it. . . .

"Q. Now, the ice that you tell the jury about, was it smooth ice— a sheet of smooth ice or was it rough and uneven ice where people had walked along in it? A. It was rough and slick.

"Q. It was rough and slick? A. Yes, sir.

"Q. Then it was not a smooth sheet of ice? A. No."

It is true that there is contradictory testimony in the record to that given by the plaintiff as to ice being on the pavement where she fell, but the question here is as to the sufficiency of the testimony given in her behalf to show that there was ice there at such time and that, it being slick, it caused her to slip and she fell when she stepped thereon; and we hold that her testimony is sufficient in such regard.

The jury by its verdict having accepted her testimony as true, the fact that there is contradictory evidence becomes immaterial. We are bound to accept her evidence as true upon a consideration of the question as to whether the action of the trial court in refusing defendant's instructions is erroneous or otherwise.

The contention must be ruled against the defendant. There is no error in the refusal of such instructions.

2. The defendant complains next that parts of the closing argument of plaintiff's counsel to the jury were prejudicial and inflammatory and that the trial court erred in failing and refusing to

reprimand plaintiff's counsel and in failing and refusing to discharge the jury upon request therefor by the defendant.

The argument upon which this point is based has been preserved for review by paragraph 13 of the motion for new trial, which is as follows:

"Because the court erred in permitting plaintiff's counsel, Mr. Allan Browne, to make improper, prejudicial and inflammatory remarks in his closing argument to the jury, and in refusing to sustain defendant's objections thereto, and in failing to reprimand plaintiff's counsel therefor, and in failing to discharge the jury. Said improper, prejudicial and inflammatory remarks made by Mr. Browne, on behalf of the plaintiff, in his closing argument to the jury, were to the effect that Mrs. Lang, one of the witnesses who had testified on behalf of the plaintiff, must be an honest woman and her testimony truthful because she was a property owner and she was testifying on behalf of the plaintiff even though her property assessment might be arbitrarily increased by the city assessor's office in order that she might be punished for telling the truth; which said argument of plaintiff's counsel is set out in full in the court reporter's transcript of said argument, which is marked defendant's Exhibit 'A' and filed herewith and made a part of defendant's motion for a new trial the same as if set out in full in the body of this motion for a new trial."

The statement of plaintiff's counsel complained of, together with the objections thereto made by defendant's counsel and the request made by defendant's counsel for reprimand by the court of plaintiff's counsel and for the discharge of the jury, together with the rulings of the court, is as follows:

"I asked him if he would explain how Mrs. Lang would tell you, an honest woman here, a property owner who lives out there, a woman, if you please, who is subject to an arbitrary assessment next week from the assessor's office on her property if they wish to do so.

"Mr. Sullivan: I object to the statement of counsel as being highly prejudicial and made for the express purpose of prejudicing this jury against the defendant Kansas City. And I ask Your Honor to reprimand counsel.

"The Court: That will be stricken out and the jury instructed to disregard it.

"Mr. Sullivan: I move the jury be instructed to disregard that statement.

"The Court: The jury is so instructed.

"Mr. Sullivan: Now, I ask Your Honor to discharge the jury.

"The Court: Overruled.

"To which ruling and action of the court in failing to reprimand counsel and in failing to discharge the jury, the defendant by its counsel at the time duly excepted and still excepts."

The record shows that the place where the plaintiff fell on the sidewalk was in front of the home of one Albert H. McGinley, who at the time was a deputy in the office of the city assessor and who had been in the employ of the city for years. The record shows that McGinley was called as a witness for the city and testified to the effect that the sidewalk where plaintiff fell was at the time free of snow and ice. It further shows that Mrs. Lang, named by plaintiff's counsel in the argument complained of, was called as a witness for the plaintiff and testified to the effect that the pavement at the point where plaintiff fell was at the time she fell covered with snow and ice.

Defendant in its brief contends that plaintiff's counsel, in the argument complained of, seized upon and took an unfair advantage of the fact that the witness McGinley was a city employee and deputy city assessor and attempted to impress on the minds of the jury that plaintiff's witness Mrs. Lang must be an honest woman and must have told the truth because she dared to appear and testify as to the presence of ice and snow on the sidewalk in front of the McGinley home, even though she was a property owner and her property assessment might be arbitrarily increased the following week as punishment for telling the truth and contends that such argument was not only outside the record evidence but was unprovoked and was made for the sole purpose of inflaming the minds of the jury and prejudicing them against the defendant and that plaintiff's counsel cleverly introduced into the minds of the jury the idea that one of the plaintiff's witnesses had braved the peril of a penal assessment by the city on her property in order to appear and testify and tell the truth in a suit against it and that she was therefore to be believed above all other witnesses. Such argument appears to be subject to the complaint made.

The argument in so far as it might merely imply that Mrs. Lang is a truthful witness who would tell the truth regardless of the fact that the assessment on her property might be raised to pay any judgment found for plaintiff was legitimate and unobjectionable; but, in so far as it might imply that the defendant city through its assessor's office with which witness McGinley (in front of whose property the plaintiff slipped and fell) was identified as a deputy would have her property assessment arbitrarily increased as a penalty for her having told the truth, such argument was not justified by any fact or facts in evidence.

Neither the defendant city nor its assessor had any authority to increase the assessment on her property as a penalty for her having told the truth; and her property was not, as a matter of law, subject to any increased assessment upon such grounds. The assumption in the argument that the city would, nevertheless, do so was entirely unwarranted; and, when it is considered that the witness McGinley

was a deputy in the defendant city's assessor's office and one of the city's principal witnesses and that plaintiff's fall occurred in front of his property, the prejudicial character of the argument and the unfair advantage taken of the city thereby at once become apparent. There was no evidence that the defendant city had ever in any instance penalized a witness who had appeared and testified against it in any such manner or that the witness McGinley in his capacity as deputy assessor or the assessor's office had ever thus arbitrarily increased the property assessment of any witness testifying in any cause against the city. The case having been a close one upon the facts, the appeal thus made to the prejudice of the jury possibly turned the scales in favor of the plaintiff. It is true that the fact that the witness McGinley was a deputy assessor and an employee of the city was a matter for fair comment in discussing his credibility as a witness and the weight to be given his testimony; but to go further and suggest that he would, by reason of his connection with defendant city, visit or have the city visit a penalty on the witness Lang for having testified to the truth or to facts in contradiction of his testimony, was an unjustified attack beyond the range of any legitimate inference from any fact or facts proven, beyond the limits of any proper exercise of imagination and beyond the pale of legitimate argument and operated directly to the prejudice of the defendant upon the trial and placed the defendant at a great disadvantage.

In Evans v. Trenton, 112 Mo. 390, l. c. 399, and 400, 20 S. W. 614, it was said:

"The largest and most liberal freedom of speech is allowed an attorney in the conduct of his client's cause. 'The range of discussion is wide. . . . In his addresses to the jury it is his privilege to descant upon the facts proved or admitted in the pleadings; to arraign the conduct of parties; to impugn, excuse, justify or condemn motives, so far as they are developed in evidence; assail the credibility of witnesses, when it is impeached by direct evidence, or by the inconsistency or incoherence of their testimony; their manner of testifying; their appearance upon the stand, or by circumstances. His illustrations may be as various as the resources of his genius; his argument as full and profound as learning can make it; and he may, if he will, give play to his wit or wings to his imagination. To his freedom of speech, however, there are some limitations. . . . what a counsel does or says in the argument of a cause must be pertinent to the matter on trial before the jury, and he takes the hazard of its not being so. Now, statements of facts not proved, and comments thereon, are outside of a cause. They stand legally irrelevant to the matter in question, and are, therefore, not pertinent. If not pertinent, they are not within the

privilege. of counsel.' [Tucker v. Henniker, 41 N. H. 317; Mitchum v. State, 11 Ga. 615.]"

We are therefore constrained to agree with the contention of the defendant that such argument was erroneous, unfair, improper, and prejudicial.

Plaintiff contends that such argument was in answer to and was provoked by unfair argument made by defendant's counsel and was therefore excusable. We are unable to find any statement made by defendant's counsel in argument which justifies any inference that might be suggested to the effect that an increased assessment might be arbitrarily made upon Mrs. Lang's property as a penalty for her having told the truth as a witness or to which such a suggestion might be in the nature of a reply.

It is further suggested that the action of the court in striking out such argument and directing the jury to disregard it was appropriate and sufficient action by the court to cure any error in said argument. This might ordinarily suffice; but in this case the record shows that, in spite of the action of the court in striking out such argument and in directing the jury to disregard it, the plaintiff immediately after the court had refused to discharge the jury in effect repeated said argument, which negatives any suggestion that the court's action in such regard was sufficient. The court's action in striking out the argument should have been accompanied by a reprimand of plaintiff's counsel. The trial court apparently ignored defendant's request that plaintiff's counsel be reprimanded for making such argument. It gave no reprimand. It should have given one.

In Bishop v. Hunt, 24 Mo. App. 373, l. c. 377 and 378, it is said: "The only proper remedy in all cases, when objection is made, is a prompt rebuke from the court, which shall be so emphatic as to strongly impress the jury with the unfairness of the procedure, and to deter them from giving the least weight to an argument so hostile to the pure administration of justice."

3. The third and final point made by defendant relates to Instruction No. 1 given in behalf of plaintiff. Such instruction is assailed upon the following grounds: (1) It assumes controverted facts. (2) It contains language calculated to emphasize unfairly the value of plaintiff's evidence. (3) It is ambiguous, confusing, and unintelligible.

We have carefully examined the instruction with reference to each criticism made and fail to find that it is open to such criticism. It may be confusing, but it is not sufficiently so as to be unintelligible or calculated to mislead.

For the error noted in the argument of counsel made, the judgment of the lower court must be reversed; and the cause must be remanded for a new trial. *Shain, P. J.,* and *Bland, J.,* concur.