HANCOCK v. CROUCH et al.

No. 7222.

Springfield Court of Appeals.

Missouri.

April 9, 1954.

Tom A. Shockley, Waynesville, for plaintiff-respondent.

STONE, Judge.

In this action, plaintiff sought to recover $568.46 as the net balance alleged to have been due him under an oral agreement with defendants, the owners of a country grocery store at Swedeborg, Missouri, where plaintiff was employed from August 25, 1950, to February 28, 1951. Defendants owned and personally conducted another store; and, plaintiff was the sole employee in, and was in complete charge of, the Swedeborg store except on Sundays when plaintiff, an Assembly of God minister, was off duty at the store and it was operated by defendants. As stated in plaintiff's petition, his oral agreement with defendants was "that when it was necessary to buy merchandise for said store, that the plaintiff would advance the necessary amount of money to buy merchandise and that the defendants would reimburse him for money so advanced". Defendants denied the alleged agreement in their answer and filed a counterclaim in which they charged that "plaintiff has failed and refused to account to defendants for the profit of $919.60" alleged to have accrued during the period of plaintiff's employment, and that defendants also had "extended credit in money and merchandise to plaintiff" in the aggregate amount of $137.86 which plaintiff had failed and refused to pay. Defendants appeal from the judgment entered upon the jury verdict awarding $568.46 to plaintiff upon his petition and denying recovery upon defendants' counterclaim. Plaintiff-respondent has filed no brief in this court.

Plaintiff was employed at a daily wage of $3, which admittedly was paid for the entire period. Plaintiff testified that, when he started to work for defendants, he talked with them "about the condition of the store"; that "there was supplies needed"; and, that "the first day, as soon as I went to work, * * * I went * * * to get supplies that was needed". "Then is when the agreement was made, when I went over * * * to get the supplies.

Wayne W. Waldo, Waynesville, Earl E. Roberts, Steelville, Roy V. Selleck, Rolla, for defendants-appellants.

I told them 'I would help them out in that way until they could get along themselves', and it was agreed upon * * *".

Although defendants had denied in their answer that there was any such oral agreement with plaintiff, their testimony upon trial indicated that there might have been some such arrangement. Defendant, A. J. Crouch, said that he had the following conversation with plaintiff at the time of his employment: "He said, 'I will work for $3.00 per day' * * *. And I told him, 'Now we will have to watch our buying as business wasn't too good'. And he said, 'Well, if you need a few dollars, I will put a little in', and I said, 'You take it out just as soon as it comes in the register'; so, he started on the 25th." When asked whether she knew "anything about the agreement for Mr. Hancock putting stock into the store", defendant, Mrs. Clara Crouch, replied "only if we was short, he would put in a few dollars along to help out".

Plaintiff's testimony was that, after entering the Swedeborg store under this arrangement, he had advanced personal funds, from time to time, to pay for merchandise and supplies for the store; that, by December 26, 1950, his net advances had aggregated $706.32; but, that payments by defendants in the aggregate amount of $137.86 during the period from March 23 to July 8, 1951 (and after termination of plaintiff's employment), had reduced the alleged indebtedness to $568.46.

Defendants admittedly knew, while plaintiff was working in their Swedeborg store, that he was claiming that he was advancing funds for them. Defendant, A. J. Crouch, recalled the following conversation with plaintiff "about three weeks" after plaintiff's employment on August 25, 1950: "I asked him 'if he spent anything' and he said 'I spent about $150.00'. Of course I was half-way blowed up because I didn't expect that. And I told him 'to quit that spending right now and don't put another dime in it'. I said, 'You get your money out of this as fast as you can; if the store can't pay for itself, we will close it up'."

Nevertheless, Crouch said that thereafter "I never paid any more attention—I never asked him (plaintiff) any more", although "he would tell the wife every once in awhile how much he spent". Defendant, Mrs. Clara Crouch, likewise testified that "every once in awhile" plaintiff had told her about his claimed advances.

During the period of his employment in defendants' store, plaintiff kept two books or records. One of these was a bound journal (to which we hereinafter refer as "the bound journal"), in which was entered each day (except on Sundays) the cash receipts, "paid-outs" and "no tax items" at the Swedeborg store. The receipts for each Sunday were left in the cash register and were entered in the bound journal with the receipts for the following Monday. Plaintiff said that entries in the column headed "pd. out" showed "what was paid out for groceries" while entries in the column headed "no tax items" showed "what was paid out for eggs", and that both of those columns reflected payments made in connection with operation of the store. Some of the eggs were purchased by checks drawn on Crouch's bank account; but, as defendant Crouch testified, "still there was a lot of eggs that come through the store that was paid cash for".

Plaintiff's theory upon trial was that the need for the additional cash claimed to have been advanced by him from time to time arose, at least in part, by reason of the fact that eggs were purchased with cash from the register, which thus was withdrawn from the business, but that proceeds derived from sale of such eggs (presumably to dealers or processors) were received and retained by defendants and were not returned to the business. Defendant, A. J. Crouch, admitted that "for the first four or five weeks" he got the proceeds derived from sale of eggs and "used it for other purposes", but said that thereafter "I began to give him (plaintiff) the money".

During the period of plaintiff's employment from August 25, 1950, to February 28, 1951, the sum total of cash receipts at the Swedeborg store, as reflected by entries in

the "cash" column in the bound journal, appears to have been $8,215.85, while the sum total of the entries in the column headed "pd. out" (reflecting, as plaintiff said, "what was paid out for groceries") appears to have been $7,894.96. But, upon the record before us, this cannot be said to establish an excess of cash receipts over disbursements for the reason that, as we have noted, plaintiff insisted that "what was paid out for eggs" was entered in the column headed "no tax items", where entries aggregating $2,577.27 appear during the same period. However, the record does not show how much cash was taken from the register in the Swedeborg store to purchase eggs, what procedure was followed with respect to resale of such eggs, the identity of the purchaser or purchasers of those eggs, what net proceeds were derived from sale thereof, what portion of the net proceeds was received and retained by defendants, what portion thereof was returned to the business, or what portion (if any) of such net proceeds derived from sale of eggs is reflected by the entries in the bound journal.

Although defendant, A. J. Crouch, said that he "didn't fool with the money at all", he also stated that "I took one check of $33.00 to pay my taxes with * * * and I hid it in a match box—he (plaintiff) found it and said something to my wife". The record is silent as to whether that withdrawal is reflected in the bound journal. Furthermore, there was no showing as to whether plaintiff's daily wage of $3.00 was paid by his withdrawal of cash from the register or by checks issued to him by defendants, or as to whether wages paid to plaintiff were reflected in the bound journal.

The foregoing will serve to demonstrate that it would be utterly impossible, from the bound journal offered in evidence by defendants, to determine whether any advances for supplies were made by plaintiff or, if so, the dates and amounts of such advances. However, plaintiff testified that, during the entire period of his employment in defendants' store, he had kept a separate account book (to which we hereinafter refer as the "account book"), four pages of which (identified as plaintiff's Exhibits 1A, 1B, 1C and 1D and received in evidence over vigorous objections by defendants' counsel) reflected accurately the dates on which, the purposes for which, and the amounts in which, advances were made by plaintiff under the alleged oral agreement, and likewise the credits to that account which, as plaintiff explained, were by withdrawals of money from the cash register.

Defendants assign error in the admission of plaintiff's Exhibits 1A, 1B, 1C and 1D "for the reason that said exhibits were merely written memoranda made by plaintiff without the knowledge of defendants, they were self-serving declarations, they were not books of account, and they were not properly identified". However, plaintiff testified that "I made that record (the account book) because they (defendants) asked me to keep a record of what I paid out"; that "I started making the record from the first day I was in there, which they asked me to do, and it laid by the cash register at times for their inspection, which they did look at it for their own benefit"; and that the record was made "from each day to day"—"when I was out money, why, I had to enter that in the book". Although they denied having "fooled with" or looked at the account book, defendants' testimony showed that they had actual knowledge of the existence and location of the account book, and that, irrespective of whether they, in fact, examined it from time to time as plaintiff said they did, defendants had ample opportunity to check the account book not less frequently than each Sunday when they cared for the store in plaintiff's absence.

■ The model "Uniform Business Records as Evidence Act" (Vol. 9, Uniform Laws Annotated, p. 387), adopted in Missouri in 1949 (Sections 490.670, 490.680 and 490.690 RSMo 1949, V.A.M.S.) "has the purpose of avoiding the many antiquated and technical rules of common law regarding the admissibility of business records as evidence". Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663, 669 (11). Of course, the Act does not make relevant that which is not relevant, nor make all business and professional records

competent evidence regardless of by whom, in what manner, and for what purpose they are compiled or offered [Freedman v. Mutual Life Ins. Co. of New York, 342 Pa. 404, 21 A.2d 81, 86(8) 135 A.L.R. 1249; Ingram v. City of Pittsburgh, 346 Pa. 45, 29 A.2d 32, 34(5); Watts v. Delaware Coach Co., 5 Del.Super. 283, 58 A.2d 689, 695 (5)]; and, "when the record entry is not of such a character as to give it the status of a *business* entry, the entry is relegated to the status of hearsay and is inadmissible under the hearsay rule." [Melton v. St. Louis Public Service Co., supra, 251 S.W.2d loc. cit. 669(14); Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 254 S.W. 2d 577, 580].

Under the Act, a record of an act, condition or event is competent evidence (1) "if the custodian or other qualified witness testifies to its identity and the mode of its preparation", (2) "if it was made in the regular course of business, at or near the time of the act, condition or event", and (3) "if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission". Section 490.680, RSMo 1949, V.A.M.S. In the instant case, plaintiff, who was the custodian of the account book, testified as to its identity and the mode of its preparation; and, according to plaintiff, the entries in the account book were made contemporaneously with the acts and events recorded. Under plaintiff's testimony (the benefit of which must be accorded to him upon this appeal), the oral agreement about plaintiff advancing funds to purchase supplies was an integral part of plaintiff's initial employment and was a necessary incident to operation of the Swedeborg store. All of the entries in plaintiff's account book, namely advances for purchase of supplies on the one hand and credits for monies withdrawn from the cash register on the other hand, pertained to the operation of defendants' business. And, as we have pointed out, entries in the bound journal, which defendants admittedly examined from time to time, were wholly insufficient to have enabled either plaintiff or defendants to have determined, from that record alone,

the precise state of the account between them at any given date.

■ It may be conceded that plaintiff's account book was kept in crude form and that his "bookkeeping" was of the most elementary character. However, "the courts are generally agreed that no particular form is essential in determining the status of an account book". Annotation, 17 A.L.R.2d 235, 243; Missouri Electric Light & Power Co. v. Carmody, 72 Mo.App. 534, 541.

Although the possible existence of a motive to misrepresent or falsify entries in the account book cannot be denied, the danger of easy detection of any false or fraudulent entry and the fear of punishment by immediate dismissal from service, if not otherwise, were continually present during the period plaintiff's account book was being compiled, by reason of the fact that the account book was readily accessible to defendants and they had ample opportunity to examine it at frequent intervals. The fact that "the book in which the entry was made was open * * * so that an entry if false would be exposed to speedy discovery" has been noted as tending to negative a motive to falsify. Poole v. Dicas, 1 Bing.N.C. 649, 131 Eng.Rep. 1267, quoted with approval in the discussion of the element of trustworthiness in the majority opinion in Hoffman v. Palmer, 2 Cir., 129 F.2d 976, 981. For that matter, the "circumstantial guarantee of trustworthiness" with respect to plaintiff's account book was the same as with respect to the bound journal which defendants offered.

■ Of course, each case must be considered and determined upon its own facts; and, upon the peculiar, unusual and unconventional situation in the instant case, we are of the opinion that the record entries in plaintiff's account book were business entries within the scope and contemplation of the Uniform Business Records as Evidence Act. This conclusion is, we think, consistent with and supported by the following representative holdings in other jurisdictions, which are of particular interest

and value by virtue of Section 490.690, RSMo 1949, V.A.M.S., providing that the Act "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it": Arques v. National Superior Co., 67 Cal.App.2d 763, 155 P.2d 643, 650–651(8, 9); In re Deakyne's Estate, 166 Pa.Super. 527, 72 A.2d 616, 617(4); Sullivan v. Carpenter, 184 Or. 485, 199 P.2d 655, 658(8, 9); Douglas Creditors Ass'n v. Padelford, 181 Or. 345, 182 P.2d 390, 393–395(1–6); Tsibikas v. Morrof, 12 N.J.Super. 102, 79 A.2d 64, 69(6); H. F. Shepherdson Co. v. Central Fire Ins. Co., 220 Minn. 401, 19 N.W.2d 772, 777(10); Oakland California Towel Co. v. Zanes, 81 Cal.App.2d 343, 184 P.2d 21, 22; Standard Oil Co. of California v. Houser, 101 Cal.App.2d 480, 225 P.2d 539, 543–544(8, 9); Pallma v. Fox, 2 Cir., 182 F.2d 895, 901(7).

Defendants also assert that the account book should not have been admitted in evidence because it purported to reflect payments of money by plaintiff. It is true that "The general rule seems to be * * * that * * * the payment or loan of money is not properly the subject of a book charge" (Nall v. Brennan, 324 Mo. 565, 23 S.W.2d 1053, 1057; Gregory v. Jones, 101 Mo.App. 270, 73 S.W. 899), although it was held to the contrary in Stephan v. Metzger, 95 Mo.App. 609, 69 S.W. 625, 628–629 (not expressly disapproved in any cited case) and loans or payments of money may be shown by book account in Vermont (Annotation, 84 A.L.R. 147, 153), whose decisions have been said to be persuasive because our account book statute (Sec. 490.650, RSMo 1949, V.A.M.S.) "was transplanted in great part from the law of Vermont". (Stephan v. Metzger, supra, 69 S.W. loc. cit. 629; Anchor Milling Co. v. Walsh, 108 Mo. 277, 18 S.W. 904). In Bader v. Ferguson, 118 Mo.App. 34, 94 S.W. 836, 837, a suit "on an account for goods sold and delivered", it was said, 94 S.W. loc. cit. 838, that an *isolated* and *unexplained* entry concerning a note was "too indefinite and too detached from the usual course of business between deceased and defendant, which was but the ordinary business between merchant and customer, to be admissible". But, in the instant case, the account book does not pertain to notes or payments thereon, and it does not reflect an isolated or unexplained transaction involving the loan or payment of money, "detached from the usual course of business" between plaintiff and defendants. Rather, the account book purports to reflect, and plaintiff testified that it did reflect, the entire "course of business" between plaintiff and defendants, i. e., all of the transactions under the oral agreement which the jury found to have been made as alleged.

■ Furthermore, there are certain well-defined exceptions to the general rule that books of account are inadmissible in favor of the party keeping them to show cash transactions. One of those exceptions is with respect to "account books where the cash items appear in the general course of accounts as part of the ordinary transactions between the parties" (Annotation, 84 A.L.R. 147, 156, and cases there collated). As has been pointed out in many cases, the reason for the general rule is "that as the person paying or loaning money has it in his power to perpetuate evidence of that fact by taking a receipt or note, the reason for admitting a party's books of account as evidence in his own favor does not exist" (Annotation, 84 A.L.R. 147, 148); but, when payment of money is in the usual course of business or part of the ordinary transactions between the parties, the reason for the rule fails. Nothing in the instant case indicates that the parties contemplated that each advance by plaintiff under the oral agreement should be evidenced by a receipt or note; but, on the contrary, it is reasonable to believe that the parties understood that advances would become the subject of book account, for plaintiff testified that the account book was kept at the request of defendants and that they examined it from time to time.

■ Another well-recognized exception to the general rule is "that the books of an agent kept in the ordinary course of his business are admissible as evidence on his behalf of the disbursements contained there-

in". 20 Am.Jur., Evidence, Section 1088; Annotation 84 A.L.R. 147, 163; Levi v. Levi, 156 Iowa 297, 136 N.W. 696, 700–701 (5); Ege's Appeal, 2 Watts, Pa., 283; Robertson v. O'Neill, 67 Wash. 121, 120 P. 884, 885(1, 2); Flanagan v. Flanagan Coal Co., 77 W.Va. 778, 88 S.E. 400. Cf. Wiggins v. Graham, 51 Mo. 17, where books kept by plaintiff, a clerk, were admitted in evidence in an action brought against his employer on an agreement by which the clerk was to receive a certain portion of the net profits of the business. Under the facts of the instant case and the stated exceptions to the general rule, we are of the opinion that advances by plaintiff under his agreement with defendants were a proper subject of book account.

■ Defendants further complain that the trial court "erroneously left it up to the jury to determine the admissibility" of the account book. Of course, the Uniform Business Records as Evidence Act contemplates that the trial court should determine initially whether "the sources of information, method and time of preparation were such as to justify * * * admission" of business records. Section 490.680, RSMo 1949, V.A.M.S.; Melton v. St. Louis Public Service Co., supra, 251 S.W.2d loc. cit. 671(19); Lynch v. St. Louis Public Service Co., Mo.App., 261 S.W.2d 521, 525(11). It has been said that the Act "grants to the trial court a wide discretion in determining whether the mode of keeping the books justified their admission" and that "a holding of the sufficiency of the evidence as to the foundation will not be disturbed if supported by substantial although conflicting evidence or inferences therefrom." · Richmond v. Frederick, 116 Cal.App.2d 541, 253 P.2d 977, 982–983(7). See also Fuller v. White, Cal.App., 193 P.2d 100, 105(11); H. F. Shepherdson Co. v. Central Fire Ins. Co., supra, 19 N.W.2d loc. cit. 778; Sullivan v. Carpenter, supra, 199 P.2d loc. cit. 658. In the instant case, the trial court found that a satisfactory foundation for admission of the account book had been laid; and, upon the record, we could not say that he erred in this determination. The jury properly was advised that the weight and value of

this evidence were for them. Defendants' assignments of error as to admission of the account book (Exhibits 1A, 1B, 1C and 1D) must be overruled.

■ Defendants also assign error in the giving of plaintiff's principal instruction, No. P–1, "for the reason that it is not supported by the evidence, and is misleading and confusing". The complaint that this instruction "is not supported by the evidence" is predicated upon the contention that plaintiff offered no competent evidence of the alleged oral agreement under which plaintiff claimed to have made advances for supplies. We are in entire agreement with the legal principle stated in the cases cited by defendants [Huger v. Doerr, Mo.App., 170 S.W.2d 689, 691(2); Stewart v. Wenger, Mo.App., 125 S.W.2d 537, 539(3); Gundelach v. Compagnie Generale Transatlantique, Mo.Sup., 41 S.W.2d 1, 2] to the effect that an instruction not based upon or authorized by the evidence is misleading, confusing and erroneous. However, that principle is not applicable in the case at bar for, as is apparent from the testimony hereinbefore reviewed, there was competent evidence from which the jury was authorized to find that the oral agreement pleaded by plaintiff had been made, as alleged.

■ Defendants also complain that Instruction P–1 was "misleading and confusing because it did not properly set out the burden of proof upon the plaintiff". However, it is axiomatic that the instructions must be read together and considered as a whole [Newman v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 45, 49 (4); Higgins v. Terminal Ry. Ass'n of St. Louis, 362 Mo. 264, 241 S.W.2d 380, 387 (20)]; and, upon examination of the record, we find that instructions (as to which no complaint is made) were given in which the jury was instructed properly as to plaintiff's burden of proof on his petition and defendants' burden of proof on their counterclaim. Accordingly, this point must be ruled against defendants.

■ Finally, defendants complain bitterly about the closing argument of plain-

tiff's counsel. After commenting that defendants' attorney had made "an awfully silly argument the way it looks to me", plaintiff's counsel said, "This is all a trumped up thing here. He (Crouch) has had the books; maybe they wrote that 'due me'", referring to a notation "Due me 160.32" appearing under date of February 21, 1951, in the bound journal introduced by defendants. Defendants' counsel made a *general* objection and added, "The witness (apparently referring to plaintiff) testified himself on the stand. And he is insinuating we forged an instrument". There was no ruling by the court. It may be noted that the bound journal had been examined by plaintiff while he was on the witness stand; that, although he conceded that most of the entries during the period of his employment were in his handwriting, he pointed out six specific entries which he had not written; and, that he also said "there could be some that I overlooked". With this evidentiary background, we cannot say that the quoted comments by plaintiff's counsel were wholly unjustified and outside the record. Louis Steinbaum Real Estate Co. v. Maltz, Mo.Sup., 247 S.W.2d 652, 657(13), 658(15), 31 A.L.R.2d 1052.

■ A more difficult question is presented by subsequent comments of plaintiff's counsel, which we quote:

"Mr. Shockley: Now they (defendants) are nobody's fools. They worked Hancock. Hancock never stole anything from them people and wouldn't from anybody and the evidence here don't show he did.

"Mr. Walso: I object to that, Your Honor. We are not charging him with stealing.

"Mr. Shockley: Keep still. You said all you wanted to. Now these figures of his here are all a trumped up thing.

"Mr. Waldo: I object to that, Your Honor.

"Mr. Shockley: I am giving my version of it, and that is the truth.

"The Court: He can give his version. Of course, the jury will follow the evidence.

"Mr. Shockley: I let you get through with a lot of tommy rot and I never said a word.

"Mr. Waldo: You knew it was right.

"Mr. Shockley: I knew it wasn't. I am telling you now it wasn't right. They (defendants) got his money. They are pretty slick-haired people; look at them. They are down here trying to work Guy Hancock out of his hard-earned cash here, and there is no telling how much on Sundays he carried off."

It will be observed that defendants' counsel made only two *general* objections, and that, after the single comment or "ruling" by the court, no subsequent objection or request for relief was interposed. The court's comment that "Of course, the jury will follow the evidence" had the practical and legal effect of approving the argument of plaintiff's counsel to which objection had been made [Ryan v. Sheffield Car & Equipment Co., Mo.App., 24 S.W.2d 166, 170; Jackman v. St. Louis & H. Ry. Co., Mo. App., 206 S.W. 244, 246(5); Neff v. City of Cameron, 213 Mo. 350, 111 S.W. 1139, 1144-1145, 18 L.R.A.,N.S., 320; Mahner v. Linck, 70 Mo.App. 380, 388–389].

■ We heartily endorse the oft-repeated statement that: " 'Trials before juries ought to be conducted with dignity and in such manner as to bring about a verdict based solely on the law and the facts. Hence reckless assertions unwarranted by the proof and intended to arouse hatred or prejudice against a litigant or the witnesses are condemned as tending to cause a miscarriage of justice' ". Calloway v. Fogel, 358 Mo. 47, 213 S.W.2d 405, 409(4); Monroe v. Chicago & A. Ry. Co., 297 Mo. 633, 249 S.W. 644, 646(1), 257 S.W. 469. "Due administration of justice demands that the jury in passing on * * * grave questions should not be allowed to have in-

jected in a case, either by evidence, remarks of counsel, or even by the conduct of the judge, any extrinsic matter that tends to create bias or prejudice". O'Hara v. Lamb Construction Co., Mo.App., 197 S.W. 163, 165(3). "One of the first duties of the judge of a trial court is to preserve order and require that the attorneys as well as other persons should, by their behavior, show a decent respect for the court and for the opposing counsel". Tuck v. Springfield Traction Co., 140 Mo.App. 335, 124 S.W. 1079, 1081; Blyston-Spencer v. United Rys. Co. of St. Louis, 152 Mo.App. 118, 132 S.W. 1175, 1183(17).

■ Our appellate courts frequently have condemned arguments of counsel designed and calculated to arouse and inflame the jury with a feeling of hostility toward the defendant [Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W.2d 807, 814(9); Dodd v. Missouri-Kansas-Texas Ry. Co., 353 Mo. 799, 184 S.W.2d 454, 457 (6, 7); Walsh v. Terminal Ry. Ass'n, of St. Louis, 353 Mo. 458, 182 S.W.2d 607, 611–613(8); Carpenter v. Kurn, 345 Mo. 877, 136 S.W.2d 997, 1007(13); Villinger v. Nighthawk Freight Service, Mo.App., 104 S.W.2d 740, 743(4)], or to create a feeling of resentment against or aversion to the opposing party, [Nelson v. Heine Boiler Co., 323 Mo. 826, 20 S.W.2d 906, 911(10); Jackman v. St. Louis & H. Ry. Co., supra, 206 S.W. loc.cit. 246; Truel v. Missouri, K. & T. Ry. Co., 143 Mo.App. 380, 128 S.W. 223, 225(4)], or to gain unfair advantage by appealing to prejudice, passion or sympathy [State ex rel. S. S. Kresge Co. v. Shain, 340 Mo. 145, 101 S. W.2d 14, 18–20; Smith v. St. Louis Southwestern Ry. Co., Mo.App., 31 S.W.2d 105, 107(8–10); Wilkinson v. Wilkinson, 222 Mo.App. 1244, 8 S.W.2d 77, 80(6); Haake v. G. H. Dulle Milling Co., 168 Mo.App. 177, 153 S.W. 74, 75(4)]. Likewise, while wide latitude in argument should be allowed, counsel should not be permitted to go beyond or outside the evidence [Williams v. Columbia Taxicab Co., Mo.App., 241 S.W. 970, 973; Chaffin v. Kansas City, 230 Mo.App. 434, 92 S.W.2d 917, 921; Jones v. Kansas City. Mo.Sup., 76 S.W.2d

340, 341], to employ language not justified by the record or to resort to irrelevant personalities. [Missouri-K-T Ry. Co. of Texas v. Ridgway, 8 Cir., 191 F.2d 363, 369–370(15, 16), 29 A.L.R.2d 984; Ryan v. Sheffield Car & Equipment Co., supra, 24 S.W.2d loc.cit. 169–170(5); Buck v. St. Louis Union Trust Co., 267 Mo. 644, 185 S.W. 208, 212(11, 12); Tuck v. Springfield Traction Co., supra, 124 S.W. loc.cit. 1081(5); Beck v. Quincy, O. & K. C. Ry. Co., 129 Mo.App. 7, 108 S.W. 132, 138(8); Franklin v. St. Louis & M. R. R. Co., 188 Mo. 533, 87 S.W. 930, 933; 53 Am.Jur., Trial, Secs. 502–3].

■ When weighed and considered in the light of the foregoing principles, we think that the closing argument of plaintiff's attorney in the case at bar was clearly improper; that it went beyond and outside the scope of legitimate argument; that it included objectionable personalities and offended against the dignity of the trial court; and that the conduct of counsel should have been condemned and dealt with summarily. However, it does not follow, as a matter of course, that the case should be reversed for another trial, for we are enjoined that no judgment shall be reversed unless we believe that error was committed "materially affecting the merits of the action". Section 512.160, RSMo 1949, V.A.M.S.; Harrison v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 348, 353–354(11).

■ Notwithstanding the insistence with which respondents' counsel now contend that the cause of their clients was prejudiced materially by the quoted argument, they did no more than to interpose two *general* objections, only one of which was ruled; and, no request was made either that plaintiff's counsel be rebuked or that a mistrial be declared. Objections, such as those made by respondents' counsel, ordinarily are insufficient to present anything for review [Hoffman v. St. Louis Public Service Co., Mo.Sup., 255 S.W.2d 736, 742(7–9)]; and, it has been held frequently that, where timely objection is not made below, objection on appeal comes too

late [Enyart v. Santa Fe Trail Transportation Co., Mo.Sup., 241 S.W.2d 268, 270–271(4); Godsy v. Thompson, 352 Mo. 681, 179 S.W.2d 44, 49(10); Gabelman v. Bolt, 336 Mo. 539, 80 S.W.2d 171, 175(5)].

Under 42 V.A.M.S. Rule 3.27 of the Supreme Court, "plain errors affecting substantial rights may be considered * * * in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved"; but, as Rule 3.27 clearly states, this should be done only "when the court deems that manifest injustice or miscarriage of justice has resulted therefrom". As our Supreme Court has so well said in Peterson v. Kansas City Public Service Co., Mo.Sup., 259 S.W.2d 789, 791, "we do not agree that Rule 3.27 may be a refuge for counsel who make no record of objection because counsel may consider certain trial situations to be 'difficult to deal with by objections'".

 We also are mindful of the fact that, in the heat of trial, zealous counsel may overstep the bounds of propriety inadvertently; that the trial court has considerable discretion as to what action should be taken with respect to matters of this character [McGinley v. St. Louis Public Service Co., Mo.Sup., 239 S.W.2d 321, 324(6); Beeler v. Miller, Mo.App., 254 S.W.2d 986, 991(8); Plannett v. McFall, Mo. App., 284 S.W. 850, 854(11); Allen v. Autenrieth, Mo.App., 280 S.W. 79, 81(4)]; that defendants' complaints about the argument of plaintiff's counsel were presented to the trial court in the motion for new trial; and, that where, as here, an able trial judge does not consider the transgression of counsel as of sufficient importance to require a new trial, the appellate court is inclined to defer to the opinion of the trial judge [Schwinegruber v. St. Louis Public Service Co., Mo.App., 241 S.W.2d 782, 786–787; Aly v. Terminal Ry. Ass'n of St. Louis, 342 Mo. 1116, 119 S.W.2d 363, 368(10); Hancock v. Kansas City Terminal Ry. Co., 339 Mo. 1237, 100 S.W.2d 570, 582].

After careful consideration of the entire argument of plaintiff's counsel in the case at bar, in the light of the evidence adduced upon trial, "we have concluded, with some reluctance" (Pritt v. Terminal Ry. Ass'n of St. Louis, Mo.Sup., 251 S.W.2d 622, 625), that we may not say with confidence or assurance that "manifest injustice or miscarriage of justice" resulted from the argument of which complaint is now made (Louis Steinbaum Real Estate Co. v. Maltz, supra, 247 S.W.2d loc.cit. 656–658), and that, therefore, notwithstanding the improper argument of plaintiff's counsel which we should not and do not approve, we would not be justified in ordering a new trial on that ground alone.

Finding no prejudicial error in the record submitted, the judgment should be affirmed. It is so ordered.

McDOWELL, P. J., concurs.

BLAIR, J., concurs in result.